ROGER L. CORN, Plaintiff-Appellant, *v.* LORAIN DIVISION, KOEHRING COMPANY *et al.*, Defendants-Appellees.

Fifth District    No. 80-319

Opinion filed March 6, 1981.

Lindholm & Williamson, of Peoria (Nile J. Williamson, of counsel), for appellant.

William J. Novick, of Fowler & Novick, of Marion, for appellees.

Mr. JUSTICE WELCH delivered the opinion of the court:

Roger L. Corn claimed to have been injured in an accident with a Koehring crane on September 29, 1977, while working on a construction site for the expansion of the Delta Mine, Amax Coal Company, near Carrier Mills, Illinois. He sued Koehring and Amax Coal Company, Inc., December 28, 1978, well within the two-year statute of limitations. Amax Coal Company, Inc., filed a motion attacking the pleadings, an answer, interrogatories, and answers to interrogatories and a request to produce documents filed by Corn. Two weeks after the statute of limitations had run Amax Coal Company, Inc., moved to dismiss the counts of Corn's complaint directed against it because the wrong defendant had been sued. Corn moved to substitute the correct defendant, Amax, Inc., under section 46(4) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 46(4)). Both motions were granted and Corn filed and served an amended complaint, different only in the substitution of Amax, Inc., for Amax Coal Company, Inc. Amax, Inc., moved to dismiss counts I and II of the complaint against it, asserting the running of the statute of limitations and denying that the provisions of section 46(4) of the Civil Practice Act had been satisfied. The trial judge granted the motion to dismiss, with prejudice. The plaintiff appeals from the dismissal.

The record shows that on December 28, 1978, Corn filed his complaint against Amax Coal Company, Inc., a foreign corporation, and Lorain Division, Koehring Company, a foreign corporation. Corn essentially pleaded common law negligence and breach of the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, pars. 60-69) against Amax Coal Company, Inc., and common law negligence and product liability against Lorain Division, Koehring Company. Amax Coal Company, Inc., filed a motion attacking the complaint on February 6, 1979, alleging various pleading defects, but not suggesting that the action should be dismissed because it did not own or control the property as alleged. A hearing was held on March 22, 1979, and the complaint was ordered amended in minor ways, but the defendant's motion to dismiss was overruled. Amax Coal Company, Inc., was ordered to answer which it did on March 29, 1979. The answer denied all of the allegations of the complaint except that the suit was brought pursuant to sections 60-69 of the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, pars. 60-69), and that Amax Coal Company, Inc., was and is doing business in Williamson County.

On April 25, 1979, Corn filed interrogatories pursuant to Supreme Court Rule 213(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 213(c)), to be answered within 28 days, and a request to produce requesting defendant.
"* * * to produce at the office of Lindholm & Williamson 809 Lehman Building, Peoria, Illinois, within thirty (30) days, or at such

time and place *as may be agreed upon by the attorneys of the parties, pursuant to Rule 214 of the Illinois Supreme Court, the following documents, objects, or tangible things for inspection, copying and reproduction: * * *."*

More than three months later, on July 30, 1979, the defendant filed answers to the interrogatories signed by George L. Raymond, Amax Coal Company, Inc., on July 12, 1979, and a response to request to produce signed by William J. Novick, attorney for Amax Coal Company, Inc., on July 27, 1979. The answers to the interrogatories generally responded in the negative to questions such as whether an architect had been hired by Amax Coal Company, Inc., and if so who. The responses to numbers 2, 50, and 51 are as follows:

"2. Did Defendant enter into any written contracts with any persons, firm or corporation for any of the construction work in progress at the place Plaintiff was injured?

ANSWER TO INTERROGATORY NUMBER 2:
No.

* * *

50. Do you have any statements from any witness other than yourself, or of any corporation or any one other than an officer, director, managing agent or foreman? If so, give the name and address * * *.

ANSWER TO INTERROGATORY NUMBER 50:
No.

51. List the names and addresses of all other persons who have knowledge of the facts of the complained of occurrence or of the injuries and damages following therefrom.

ANSWER TO INTERROGATORY NUMBER 51:
Defendant has insufficient knowledge to answer."

In response to the request to produce, filed the same day as the answer to interrogatories, the answer to the first request for "All court reporter statements, memorandum [*sic*], notes of conversations with said witnesses, or other documents relating to the occurrence complained of in the complaint," was:

"1. Attached is photocopy of recorded interview with George Knight, Galatia, Illinois."

The response to the fifth request for "Any and all contrats [*sic*] agreements, or documents between AMAX COAL COMPANY, INC., and any contractor, sub-contractor or other entity made or compiled with respect to the construction of AMAX COAL COMPANY's mine near Carrier Mills, Illinois, dated within four (4) years of September 29, 1977," was:

"5. Only contract known is between Amax, Inc. and McNally Pittsburgh Manufacturing Corporation, which copy will be produced for inspection and copying."

No time or place was suggested by Amax Coal Company, Inc., for production of the contract which was already more than two months overdue on discovery. In fact the contract was not produced until much later, and then only the first and last pages. By contrast, a photocopy of the interview of George Knight by Ken Johns, apparently an investigator, was produced and attached to the answers to interrogatories. The interview took place on February 12, 1979.

The transcript of the interview, entitled "STATEMENT," of George Knight is five pages long. Knight identified himself as "a health and safety representative" employed by "Amax Coal Co., Delta Mine." He indicated he had worked there almost three years. During the interview he variously referred to: "Amax Coal Co. (Delta Mine); Amax Coal, Delta Mine; Amax Delta Mine Coal Company property; Amax Coal Co.; Amax Coal Company's Delta Mine; Amax Coal Company, Delta Mine; and Amax Coal Company." He never used an "Inc." or "Division" to distinguish companies and never referred to "Amax, Inc."

Knight was asked if a contract had been drawn up between the general contractor, McNally Pittsburgh and "the Amax Coal Company." He said yes. He was asked further:

"Q. Then as I understand it, then the general contractor uh, was, had a contract with the *Amax Coal Co.* to build a preparation plant, * * *?

A. Yes Sir." (Emphasis added.)

On August 16, 1979, Corn filed notices of his intent to take discovery depositions of George Knight and several other witnesses on September 11 and 12, 1979. On August 22, 1979, he filed amended notices postponing the dates of the depositions until October 16 and 17, 1979.

The statute of limitations ran on September 29, 1979.

October 12, 1979, Amax Coal Company, Inc., filed a motion to dismiss the case against it supported by an affidavit of "Wayne L. Kelley, a vice president of Amax Coal Company, Inc." The motion and affidavit repeated that Amax Coal Company, Inc., had nothing to do with the premises at the time of the accident. No mention was made of Amax, Inc.

On October 16, 1979, Corn filed a notice of his intent to depose Wayne Kelley for discovery. October 19, 1979, the deposition was continued until November 5, 1979.

On November 5, 1979, during the deposition Kelley indicated he was vice president and general counsel of the Amax Coal Company, Division of Amax, Inc. He was an attorney licensed to practice in Illinois, and was "vaguely familiar" with the suit brought by Roger Corn. His familiarity

was based on what one of his subordinates, George Raymond, has told him. George Raymond was the person who answered the interrogatories for Amax Coal Company, Inc., on July 12, 1979. In response to questions about the corporate structure of Amax, Inc., Kelley explained that there were two Amax Coal Companies. Amax Coal Company, Inc., was a wholly owned subsidiary of Amax, Inc. Amax Coal Company, Inc., was originally made the defendant in this suit. Wayne Kelley was vice-president of it and in that capacity signed the affidavit attached to the defendant's motion to dismiss of October 12, 1979.

Amax Coal Company division of Amax, Inc., was in fact the company connected with the expansion project at the Delta Mine. Wayne Kelley was also vice president of this divison, and was general counsel as well.

Shortly afterward on November 15, 1979, Corn filed a motion to substitute as a defendant Amax Coal Company, a Division of Amax, Inc., a foreign corporation, for Amax Coal Company, Inc., a foreign corporation, citing sections 21(2) and 46(4) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, pars. 21(2), 46(4)).

On December 7, 1979, Amax Coal Company, Inc., filed a motion to strike the request and dismiss the complaint, based on the running of the statute of limitations, and attached the first and last pages of the contract between Amax, Inc., and McNally Pittsburgh to the motion. The motion was supported by an affidavit of Wayne Kelley which stated among other things that the Amax Coal Company Division of Amax, Inc., was not a separate legal entity but merely a part of Amax, Inc., the party that entered into the construction contract with McNally Pittsburgh.

On January 25, 1980, Judge Snyder Howell heard argument on the motions. He granted the motion of Amax Coal Company, Inc., to be dismissed from the case. He denied Corn's motion to substitute under section 21(2), but granted the motion to add Amax, Inc., a foreign corporation, as a defendant under section 46(4). An amended complaint was filed February 1, 1980, and summons was issued against Amax, Inc., a foreign corporation. On April 22, 1980, Amax, Inc., represented by the same attorneys who had represented Amax Coal Company, Inc., filed a motion to dismiss counts I and II of the complaint against it, based on the statute of limitations and alleging that section 46(4) of the Civil Practice Act had not been satisfied.

Judge George Oros heard arguments on the motion June 11, 1980, and granted it, dismissing both counts against Amax, Inc., with prejudice.

Corn argues that the ruling of Judge Howell on January 25, 1980, allowing him to add Amax, Inc., as a party under section 46(4) of the Civil Practice Act, should be *res judicata* and dispositive of the issue at the June 11, 1980, hearing. Although the same issue was argued at the two hearings,

the parties were not the same. On January 25, Amax Coal Company, Inc., was involved. On June 11, Amax, Inc., was moving for dismissal. Plaintiff argues that although not identical parties, Amax Coal Company, Inc., and Amax, Inc., were closely enough related to be "privies" and thereby bound by *res judicata*. (*People v. Kidd* (1947), 398 Ill. 405, 408-09, 75 N.E.2d 851, 853.) We are not persuaded that the parties were privies and find that *res judicata* does not apply. The court had not yet acquired jurisdiction over Amax, Inc., who therefore could not defend against the motion to add it as a party at the hearing on January 25, 1980.

We do find, however, that Judge Oros erred in dismissing counts I and II of Corn's complaint against Amax, Inc. Section 46(4) of the Civil Practice Act states:

"(4) A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all of the following terms and conditions are met: * * *." Ill. Rev. Stat. 1979, ch. 110, par. 46(4).

Let us look at the five conditions as applied to the instant case. "(a) the time prescribed or limited had not expired when the original action was commenced." (Ill. Rev. Stat. 1979, ch. 110, par. 46(4)(a).) The original complaint was filed December 28, 1978. The statute of limitations ran September 29, 1979.

"(b) failure to join the person was inadvertent." (Ill. Rev. Stat. 1979, ch. 110, par. 46(4)(b).) From the record it appears that Corn did not know that there were two Amax Coal Companies, one a division of Amax, Inc., and one an incorporated, wholly owned subsidiary of Amax, Inc., until the deposition of Wayne Kelley on November 5, 1979, after the statute of limitations had run. Corn moved promptly to add Amax, Inc., as a defendant under section 46(4) of the Civil Practice Act or alternatively to substitute it for Amax Coal Company, Inc., under section 21(2) of the Civil Practice Act which deals with misnomers. The motion to add Amax, Inc., under section 46(4) was granted January 25, 1980. We find that Corn acted within a reasonable period of time after receiving notice of the mistake. *Bates v. Wagon Wheel Country Club, Inc.* (1971), 132 Ill. App. 2d 161, 163, 266 N.E.2d 343, 345.

Amax, Inc., argues that Corn had been notified of the proper defendant two months prior to the running of the statute, by the responses to the discovery motions on July 30, 1979, and that therefore his failure to act until after the running of the statute of limitations was not "inadvertent." (*Fields v. 6125 Indiana Avenue Apartments, Inc.* (1964), 47 Ill. App. 2d 55, 58, 196 N.E.2d 485, 487; *Robinson v. Chicago National Bank* (1961), 32 Ill. App. 2d 55, 61, 176 N.E.2d 659, 662.) It is true that Amax Coal Company, Inc., supplied the name of "Amax, Inc.," as having made the

only contract it knew of with McNally Pittsburgh, without supplying a copy of the contract or stating when or where Corn could have access to the contract, in answering question 5 of Corn's request to produce. However, in answer to question 1 of the same request to produce, George Knight's transcript stated that "Amax Coal Company" had a contract with McNally Pittsburgh for the construction of the Delta Mine Expansion. It appears that the information which could have alerted Corn to the existence of a different defendant was buried in confusing and conflicting information. This is a very different situation from those in *Fields* and *Robinson* where the names and addresses of the proper defendants had been supplied, identified as to their roles in the transactions, many months prior to the running of the statute of limitations.

As stated in *Bates*:

> "When two or more corporations are set up to operate various aspects of a business, there are usually sound business reasons for doing so. We, likewise, recognize that a corporation, or its attorney, can attempt to escape liability from payment of a tort claim against it by raising any legal defense to which it is entitled. However, when intermingled corporations have intermingled agents and officers who conduct the business and management of such corporations in such a manner that the general public is under the impression that they are all one and the same corporation, we feel that these corporations should be bound by their representations and should not benefit from the confusion that emanates from their corporate complexities." *Bates v. Wagon Wheel Country Club, Inc.* (1971), 132 Ill. App. 2d 161, 166-67, 266 N.E.2d 343, 348.

We find that Corn's confusion as to the identity of the proper defendant was inadvertent and that he moved to rectify his mistake within a reasonable time after becoming aware of it.

"(c) service of summons was in fact had upon the person, his agent or partner, as the nature of the defendant made appropriate, even though he was served in the wrong capacity or as agent of another, * * *." (Ill. Rev. Stat. 1979, ch. 110, par. 46(4)(c).) Service was made upon CT Corporation as the registered agent of Amax Coal Company, Inc. CT Corporation is also the registered agent in Illinois of Amax, Inc.

"(d) the person, within the time that the action might have been brought or the right asserted against him, knew that the original action was pending and that it grew out of a transaction or occurrence involving or concerning him." (Ill. Rev. Stat. 1979, ch. 110, par. 46(4)(d).) Wayne Kelley, vice president of both Amax Coal Company Division of Amax, Inc., and Amax Coal Company, Inc., testified that he was "vaguely familiar" with the case through his subordinate, George Raymond. George Raymond signed the answer to interrogatories on behalf of Amax

Coal Company, Inc., on July 12, 1979, before the running of the statute of limitations. In addition, the same attorney represented both the incorrect and the correct defendant during the entire case.

"(e) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading * * *." (Ill. Rev. Stat. 1979, ch. 110, par. 46(4)(e).) In the instant case, the amended counts I and II of the complaint are different from the original complaint only in the name of the defendant.

We find that all five of the requirements of section 46(4) of the Civil Practice Act were made by Corn and that it was error to dismiss the action against Amax, Inc., because the statute of limitations had run. This court is of the opinion that the plaintiff should be permitted to proceed on his amended complaint against Amax, Inc. This cause is reversed and remanded to the trial court to proceed in a manner consistent with the views expressed herein.

Reversed and remanded.

KARNS and HARRISON, JJ., concur.