RACHELLE SHINER, Plaintiff-Appellee, v. MYRON FRIEDMAN *et al.*, Indiv. and d/b/a Myron & Phil's Restaurant, Defendants-Appellants.

First District (2nd Division)   No. 86—2325

Opinion filed August 25, 1987.

Kiesler & Berman, of Chicago (Edward L. Cooper, of counsel), for appellants.

Rosin, Rosin & Associates, Ltd., of Chicago (Robert A. Rosin, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Defendants, Myron Friedman and Phil Friedman, individually and d/b/a Myron & Phil's Restaurant, appeal from the jury's verdict in favor of plaintiff for $125,000. Plaintiff fractured her ankle falling in the ladies' room of defendants' restaurant in Lincolnwood, Illinois. On appeal, defendants allege that: (1) the trial court erred in denying defendants' motion to dismiss plaintiff's amended complaint; (2) the trial court erred in giving instruction Illinois Pattern Jury Instruction, Civil, No. 5.01 (2d ed. 1971) (hereinafter cited as IPI Civil 2d) to the jury; (3) the trial court erred in instructing the jury that damages may be awarded for the value of earnings lost; (4) defendants were prejudiced by plaintiff's opening statement, which included reference to a doctor's findings which were not offered into evidence; (5) the trial court erred in instructing the jury that damages are allowed for aggravation of a preexisting condition; (6) the trial court erred in instructing the jury that damages are allowed for future pain and suffering; (7) the trial court erred in not finding that plaintiff was comparatively negligent as a matter of law; (8) the trial court erred in giving instruction IPI Civil 2d No. 15.01 relating to proximate cause to the jury; and (9) the trial court erred in giving instruction IPI Civil 2d No. A21.02 (Supp. 1981) because it failed to inform the jury as to plaintiff's burden to prove actual or constructive notice to defendants of the alleged defective condition.

On November 30, 1981, plaintiff filed a complaint against defendant, Myron & Phil's Northbrook Corporation, individually and d/b/a Myron & Phil's Restaurant, for injuries she suffered at Myron & Phil's Restaurant in Lincolnwood, Illinois, on July 2, 1980. Myron Friedman was served with summons on December 13, 1981. On January 11, 1982, defendant corporation filed a general appearance and an answer in the form of a general denial. On January 12, 1982,

defendant corporation sent interrogatories to plaintiff. Thereafter, the parties engaged in discovery, including the exchange of additional interrogatories and the taking of depositions of various occurrence witnesses.

On January 20, 1986, Myron Friedman testified at his deposition that the Myron & Phil's corporation had owned the Myron & Phil's Restaurant located at the Northbrook Holiday Inn, but that the restaurant in Lincolnwood, of the same name, was owned in partnership by himself and his brother, Phil Friedman. On January 27, 1986, plaintiff filed an amended complaint adding Myron Friedman and Phil Friedman, individually and d/b/a Myron and Phil's Restaurant, as additional defendants. On the same day, the trial court granted plaintiff leave to file the amended complaint. On February 13, 1986, defendants filed an answer to plaintiff's amended complaint. On April 21, 1986, defendants filed a motion to dismiss plaintiff's amended complaint on the basis that it was time barred pursuant to section 2—619(5) of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(5).) On May 9, 1986, the trial court denied defendants' motion to dismiss. After a jury verdict in favor of plaintiff, defendants filed a post-trial motion which was denied by the court on August 8, 1986.

On July 2, 1980, plaintiff Rachelle Shiner entered Myron & Phil's Restaurant at approximately 7 p.m. She first met her friend Patricia Goldbortin, who was waiting to be seated. After being seated and having appetizers, Goldbortin decided to go to the ladies' room. Plaintiff accompanied her to the washroom. Plaintiff entered the washroom first. After pushing the washroom door open and taking one or two steps, plaintiff's right foot "went out from under her" and she slipped and fell to the floor. Plaintiff testified that she slipped due to water on the tile floor; that there were also toilet tissues on the floor and her clothes were drenched in water. Goldbortin testified that approximately one hour prior to the accident, she observed that the washroom was messy; that it was wet and there was some toilet paper on the floor and there was not enough toilet paper in the washroom stalls. Goldbortin informed the bartender, Johnnie Unger, of the condition of the ladies' room. Goldbortin also testified that after plaintiff slipped, she rushed out to find Myron Friedman; that she told Myron to call the Lincolnwood paramedics; that she was right behind plaintiff when plaintiff fell and that she, Goldbortin, almost fell because of the water; that the floor of the ladies' room was messy, sloppy and wet; that it looked worse than it was when she had seen it an hour before; that she thought she

smelled urine; and that she saw no matting or rubber mats or carpeting on the floor.

When the paramedics arrived, they examined plaintiff's right leg, placed an air cast on her right leg and took her to St. Francis Hospital in Evanston, Illinois. John Wagner, an emergency room paramedic for the Lincolnwood police department for 10 years, testified that when he arrived at the restaurant and walked into the ladies' room, he noticed water on the floor because he almost fell. He also testified that there was no mat on the washroom floor.

In the emergency room of St. Francis, Dr. Maylahn, a board-certified orthopedic surgeon, examined plaintiff's right leg on July 2, 1980. He observed a gross deformity in plaintiff's right ankle and that she was unable to bear weight on the leg or to move it. X rays revealed that plaintiff was suffering from a "tri-malleolar fracture." On July 7, 1980, Dr. Maylahn performed surgery on plaintiff's ankle in order to correct the alignment of bones fractured. Before plaintiff was discharged from the hospital on July 23, 1980, Dr. Maylahn placed a new long-leg cast on plaintiff's right leg. The cast stretched from plaintiff's groin to her toe. During plaintiff's hospital stay, plaintiff was confined to her bed and needed help bathing.

On September 3, 1980, plaintiff's cast was removed and X rays were taken. Dr. Maylahn determined that there was sufficient healing to discontinue the cast. Maylahn prescribed rehabilitation exercises and crutches for plaintiff and informed plaintiff not to place any weight on her right foot. On January 22, 1981, Dr. Maylahn examined plaintiff and observed that plaintiff complained about the lack of lateral movement of her ankle and the tendons in her right calf; that she was, however, responding well to rehabilitation and had increased her range of motion. On March 19, 1981, Dr. Maylahn observed that plaintiff had some complaints of swelling and pain when bearing weight on the ankle.

In May of 1981, plaintiff fell and sustained fractures of the metatarsal bones or bones of the mid-foot. Dr. Maylahn testified that plaintiff might be more susceptible to an injury to her foot because she had not regained full strength in her right leg. In August of 1981, plaintiff fell and sustained a fracture to her pelvis. Plaintiff told Dr. Maylahn that she fell when her ankle gave out.

The day prior to trial, Dr. Maylahn examined plaintiff's two ankles. He testified that X rays revealed evidence of some traumatic arthritis in the right ankle. He further testified that traumatic arthritis can result from a fracture of the type that plaintiff suffered; that based on his experience in treating fractures, and seeing this

type of change, he would have to correlate the arthritis with the initial fracture.

Plaintiff testified that she had been employed by MCI since 1978. She was an outside saleswoman and her duties included traveling from business to business seeking new subscribers for long-distance services. She was able to perform these services despite the fact that she had been using a cane since 1976. She had a prior injury to her left foot and right knee, and used a cane because it made her feel more secure. In 1979, plaintiff earned $31,438.50 from MCI and during the six months from January 1, 1980, until June 22, 1980, she had earned $21,957 from MCI. Plaintiff did not return to MCI during 1980. MCI eliminated its outside sales force, including plaintiff's position, due to a change of marketing strategy one week before the July 2, 1980, occurrence. As a result, plaintiff had begun to make arrangements with Patricia Goldbortin to work as an outside saleswoman for Goldbortin's company. After her injury, plaintiff did return to work for MCI in March of 1981. She worked there until August 10, 1981, when her right ankle gave out, causing her to fall and resulting in a broken pelvis.

Patricia Goldbortin testified that she was president of a corporation called Borden Studios which manufactured wall decor. The company had nationwide distribution and utilized outside salesmen in each State to generate business. Goldbortin testified that she had discussions with plaintiff relating to plaintiff's becoming an outside saleswoman for Borden Studios; that plaintiff was qualified for the job even though it involved a change in product; that she estimated plaintiff's salary at $50,000; and that other salespersons ranged in salary from $35,000 to $60,000.

■■ ■ Defendants' first contention is that the trial court erred in denying defendants' motion to dismiss plaintiff's amended complaint because the statute of limitations barred plaintiff's claim. Defendants claim that plaintiff may not amend her complaint under the misnomer statute. (Ill. Rev. Stat. 1985, ch. 110, par. 2—401; *Leonard v. City of Streator* (1983), 113 Ill. App. 3d 404, 447 N.E.2d 489.) Yet, plaintiff asserts that the amendment is proper under section 2—616(d) of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(d).) We agree.

Section 2—616 of the Code of Civil Procedure is to be liberally construed to the end that cases be decided on their merits and not by procedural technicalities. (*Campbell v. Feuquay* (1986), 140 Ill. App. 3d 584, 590, 488 N.E.2d 1111.) The decision whether to allow pleadings to be amended rests with the sound discretion of the trial

judge, but the test to be applied in determining whether that discretion has been abused is to ask whether the trial court's decision furthers the ends of justice. (*Campbell v. Feuquay* (1986), 140 Ill. App. 3d 584, 590, 488 N.E.2d 1111.) Other factors to consider in determining whether or not a motion to amend the pleadings should be allowed are prejudice and surprise to the other party. *Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 230, 359 N.E.2d 745.

Section 2—616 provides that an amendment may be made that relates back to the date of filing of the original pleading, even though the statute of limitations has expired, upon conditions summarized as follows:

(1) the original action was commenced within the appropriate limitations period;

(2) failure to join defendant was inadvertent;

(3) service of summons was in fact had upon this person, his or her agent or partner, even though he or she was served in the wrong capacity or as agent of another;

(4) the person, within the time that the action might have been brought or the right asserted against him or her, knew that the original action was pending and that it grew out of a transaction or occurrence involving or concerning him or her;

(5) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence. Ill. Rev. Stat. 1985, ch. 110, par. 2—616.

It is evident that parts (1), (3), (4), and (5) are easily satisfied. The original complaint was filed within the prescribed time. Plaintiff was injured on July 2, 1980. The action was filed on November 30, 1981, well within the two-year statute of limitations period. Service of summons was in fact made upon Myron Friedman on December 13, 1981, who also acts as partner to his brother and codefendant Phil Friedman. Similarly, Myron Friedman also knew by virtue of the summons that the original action was pending. Finally, it is clear that the amendment grew out of that same transaction or occurrence.

■ The issue confronting this court is whether the failure to join defendants was inadvertent. There is inadvertence if the plaintiff was "not turning the mind to a matter; heedless; negligent; inattentive" in failing to join the new defendants originally, but acted to join the new defendants within a reasonable period of time after receiving notice of their existence. (*Bates v. Wagon Wheel Country*

*Club, Inc.* (1971), 132 Ill. App. 2d 161, 163, 266 N.E.2d 343.) Plaintiff notes the confusion created by the different entities which defendants were involved in. Defendant Myron & Phil's Northbrook Corporation operated and owned a Myron & Phil's Restaurant in Northbrook, while Myron Friedman and Phil Friedman owned and operated in partnership a Myron and Phil's Restaurant in Lincolnwood. During discovery and throughout the pendency of this litigation, defendants proceeded under the name of Myron & Phil's Northbrook Corporation.

■ Plaintiff claims that it was not until the taking of Myron Friedman's deposition on January 20, 1986, that the true identity of the owners, Myron and Phil as partners, was learned. Our review of the record reveals that in answers to interrogatories filed by defendant on October 12, 1982, Myron Friedman stated that his position was that of partner and that he was signing the interrogatories as such. The relevant question, then, is whether inadvertence is exceeded by plaintiff's failure to recognize that the correct defendant was a partnership and then act within a reasonable amount of time. If plaintiff had been made aware of the correct defendant well within the statutory limitation period but had failed to act until after the period ran, she would have exceeded a reasonable amount of time and thus inadvertence would have been exceeded. (*Bates v. Wagon Wheel Country Club, Inc.* (1971) 132 Ill. App. 2d 161, 164, 266 N.E.2d 343; *Fields v. 6125 Indiana Avenue Apartments, Inc.* (1964), 47 Ill. App. 2d 55, 58, 196 N.E.2d 485; see *Evans v. Graber, Inc.* (1983), 115 Ill. App. 3d 532, 536, 450 N.E.2d 482.) In this instance, plaintiff was not aware of the true owner of the Lincolnwood restaurant until more than two years after the occurrence. Therefore, this is not a case where plaintiff was aware of the true identity of the defendant prior to the running of the statute of limitations and did not act upon the information until after the statute had run out.

While plaintiff was clearly negligent in failing to join defendants until four years after she had notice of the true nature of ownership, we construe the statute in light of its objectives. As we stated in *Bates*:

> "When the defendant has notice from the beginning of the suit of the claim against it, the reason for statutes of limitations is not as important. Such statutes must be construed in light of their objectives. Their basic policy is to afford a defendant a fair opportunity to investigate the circumstances upon which liability against him is predicated

while the facts are still accessible. [Citation.] Statutes of limitations are for preventing delays in asserting claims and to prevent the asserting of stale claims. It was never intended that such statutes would be the means by which a corporation could escape liability of a tort claim against it by confusing its identity through a complex intermingling of its corporation names and structure with that of other similar corporations." *Bates v. Wagon Wheel Country Club, Inc.* (1971), 132 Ill. App. 2d 161, 167, 266 N.E.2d 343.

■ We hold that the trial court did not abuse its discretion by denying defendants' motion to dismiss plaintiff's amended complaint. It is clear that the trial court's decision furthered the ends of justice. Myron Friedman and Phil Friedman had notice of the suit from the beginning of its filing. They completed discovery and had a fair opportunity to investigate the circumstances of liability. Therefore, it is evident that defendants were not prejudiced in any way by the plaintiff's amended complaint.

■ Defendants' second contention is that the trial court erred in giving instruction IPI Civil 2d No. 5.01 to the jury. IPI Civil 2d No. 5.01 provides:

"If a party to this case has failed to produce a witness within his power to produce, you may infer that the testimony of the witness would be adverse to that party if you believe each of the following elements:

(1) The witness was under the control of the party and could have been produced by the exercise of reasonable diligence.

(2) The witness was not equally available to an adverse party.

(3) A reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him.

(4) No reasonable excuse for the failure has been shown."

Defendants assert that this instruction is contrary to the law as announced in *Kelley v. American Motors Corp.* (1985), 130 Ill. App. 3d 662, 474 N.E.2d 814. In *Kelley*, the court held that an instruction based on IPI Civil 2d No. 5.01 was improperly given where plaintiff contended that an AMC Hornet was designed to be unreasonably dangerous. The court found that the instruction would prejudice defendant where the plaintiff stated that out of 10,000 employees, defendant was not able to produce one witness to testify that the Hornet had a good fuel system. The court stated that, "[u]nder

the plaintiff's approach, the defendant would have to parade before the jury all of its employees who are knowledgeable about these matters in order to forestall the giving of this instruction." 130 Ill. App. 3d 662, 676, 474 N.E.2d 814.

In the instant case, the giving of this instruction was clearly not prejudicial. Unlike *Kelley*, defendants did not have 10,000 employees. Myron Friedman testified that busboys regularly cleaned the floors of the washrooms. Specifically, he stated that two busboys, Mr. Vasquez and Mr. Silva, inspected the washroom after plaintiff fell. We believe that an employee is just the type of witness who is not equally available to both parties due to the likelihood that such witness' testimony would be expected to be favorable to defendant. Therefore, it is clear that this instruction did not impermissibly burden defendants or prejudice them.

■ Defendants' third contention is that the trial court erred in instructing the jury that damages may be awarded for the value of earnings lost. Defendants assert that the instruction was improperly given in light of the "highly speculative" nature of evidence regarding plaintiff's lost earnings. In order to recover lost earnings, all the law requires is that plaintiff present evidence which will establish, with a fair degree of probability, a basis for the assessment of damages. (*Tracy v. Village of Lombard* (1983), 116 Ill. App. 3d 563, 575, 451 N.E.2d 992.) In *Tracy*, the court held that the testimony given by plaintiff and an owner of a restaurant that the owner planned to hire plaintiff prior to plaintiff's injury was admissible. The court also accepted the restaurant owner's testimony of plaintiff's lost earnings even though his estimate was undocumented. The court concluded that this testimony, aside from the question of credibility, was not speculative or uncertain.

In the instant case, plaintiff testified that she had been employed as an outside saleswoman by MCI since 1978. In 1979, plaintiff earned $31,438.50 from MCI and during the six months from January 1, 1980, until June 22, 1980, she had earned $21,957 from MCI. Plaintiff's salesgroup was eliminated and she made arrangements with Patricia Goldbortin to work as an outside saleswoman for Goldbortin's company.

■ Goldbortin testified that she planned to hire plaintiff prior to her injury on July 2, 1980; that plaintiff was qualified to be an outside salesperson; that other salespersons' salaries ranged from $35,000 to $60,000 a year; and that plaintiff's salary was likely to be $50,000 a year. It is clear that defendants' objections go to the credibility of the witness and that plaintiff established, with a fair

degree of probability, a basis for assessment of damages.

■■ Defendants' fourth contention is that defendants were prejudiced by plaintiff's opening statement, which included a reference to a doctor's findings which were not offered into evidence. During his opening statement, plaintiff's lawyer stated that Dr. Callahan, an orthopedic doctor, examined plaintiff's right ankle and determined it to be an arthritic ankle. While Dr. Callahan was never called as a witness during the trial, plaintiff asserts that no prejudice occurred where Dr. Maylahn's testimony was identical to Dr. Callahan's diagnosis. We agree. Dr. Maylahn testified at trial that X rays revealed that plaintiff was suffering from arthritis in her right ankle. Therefore, it is clear that defendants suffered no prejudice from plaintiff's opening statement.

■■ Defendants' fifth contention is that the trial court erred in instructing the jury that damages are allowed for aggravation of a preexisting condition. Defendants assert that it was reversible error for the court to give this instruction where there was no direct or indirect evidence that plaintiff had suffered aggravation of a preexisting condition. (*Falkenthal v. Public Building Com.* (1982), 111 Ill. App. 3d 703, 709, 444 N.E.2d 498.) In the instant case, plaintiff testified that at the time of the occurrence she was using a cane and had suffered previous injuries to her right knee and left foot. Dr. Maylahn testified that her right knee was stiff after the long-leg cast was removed; that the muscles had to be strengthened. After plaintiff's cast was removed in September of 1980, her right knee was in a weakened condition until at least December of 1980. Dr. Maylahn testified that plaintiff's lack of strength in her leg might make her more susceptible to falls, such as the one that occurred in May of 1981. We believe that the evidence elicited at trial establishes that the giving of the instruction providing for aggravation of a preexisting condition was warranted.

■■ Defendants' sixth contention is that the trial court erred in instructing the jury that damages are allowed for future pain and suffering. Defendants assert that there was never any evidence presented as to future pain and suffering of a permanent nature by plaintiff. Six years after her initial injury, however, plaintiff testified at trial that she still felt pressure on her ankle and that it still hurts. While Dr. Maylahn testified that there was no evidence of fracture at the time of trial, he also opined that X rays revealed that plaintiff had traumatic arthritis in her right ankle. He further testified that he correlated the occurrence of arthritis with plaintiff's injury. We find that the jury could infer from this testimony that

plaintiff's injury was permanent. Dr. Maylahn's testimony was clearly not based on conjecture but rather on X rays he interpreted based on his experience as an orthopedic surgeon. Any objection to his testimony merely goes to the credibility of his opinion and this is for the jury to decide.

■■ Defendants' seventh contention is that the trial court erred in not finding that plaintiff was comparatively negligent as a matter of law. A jury's finding on the issue of comparative negligence will not be set aside on review absent a finding that the verdict is contrary to the manifest weight of the evidence. *Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 1061, 466 N.E.2d 1064.

■■ In the instant case, plaintiff testified that she slipped and fell on the first or second step as she entered the ladies' restroom. As she pushed the bathroom door inward, she saw a woman to the right of the door standing in front of the mirror. She did not see the water on the floor until she slipped. The jury was instructed that plaintiff must have acted as a reasonable prudent person under the circumstances. We hold that the jury's verdict is not against the manifest weight of the evidence.

■■ Defendants assert that plaintiff was comparatively negligent as a matter of law because she failed to notice the accumulated water until she fell. Defendants cite *Stambaugh v. Central Illinois Light Co.* (1976), 42 Ill. App. 3d 582, 356 N.E.2d 148, for support. This case is clearly inapposite. In *Stambaugh*, the court held that plaintiff was contributorily negligent as a matter of law where plaintiff suffered injuries after climbing a tower and raising an antenna, oblivious to power lines that were clearly visible and posed an obvious danger. The current from an uninsulated electric power line arced to the antenna and knocked plaintiff to the ground. The court found that plaintiff had plenty of opportunity prior to climbing the antenna tower in broad daylight to observe the electrical lines and appreciate the danger. In the instant case, plaintiff had no opportunity to plan in advance how to avoid a danger because she could not observe the wet and unsafe condition on the floor until she was upon it.

■■ Defendants' eighth contention is that the trial court erred in giving instruction IPI Civil 2d No. 15.01 to the jury. Defendants claim that the instruction was improper because it allowed a finding of proximate cause even if defendants' actions combined with some other cause(s) to injure plaintiff. Defendants cite *Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 457 N.E.2d 85, for the proposition that the proximate cause instruction shall not include

86

other concurrent causes acting in combination to cause injury where there is no evidence of a concurring or contributing cause.

In the instant case, there was sufficient evidence of concurring or contributing causes. Other patrons may have been the source of the water and debris on the washroom floor. In fact, Myron Friedman stated that sometimes the floors in the ladies' washroom, particularly in front of the sink, would tend to get messy from time to time. To remedy this problem, Friedman testified that he placed a mat on the bathroom floor and that a hostess would check the condition of the restroom every hour or so. Finally, defendants failed to show how the inclusion of this instruction prejudiced their defense of comparative negligence or absolved them of their duty to provide reasonably safe facilities.

■■ Defendants' last contention is that the trial court erred in giving instruction IPI Civil 2d No. A21.02 (Supp. 1981) where such instruction failed to inform the jury as to plaintiff's duty to prove actual or constructive notice to defendants of the alleged defective condition of defendants' premises. We hold that this contention is clearly without merit. Plaintiff's issue instruction No. 14, IPI Civil 2d No. A20.01, provides the necessary element of notice. The instruction provides that a plaintiff must show that defendant:

"Failed to properly remove water and other substances when defendants knew or reasonably should have known of the existence of said water and other substances on the floor of the ladies' washroom."

Clearly, this instruction informs the jury of plaintiff's duty to prove actual or constructive notice by defendants.

In view of the foregoing, we affirm the trial court.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.