RITA BEHR, Plaintiff-Appellant, v. CLUB MED, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   Nos. 1—87—3289, 1—88—2465 cons.

Opinion filed November 1, 1989.

---

*Justice McNamara participated in this appeal prior to his assignment to the sixth division.

Mullen, Minella & Chase, of Chicago (John C. Mullen and Cynthia L. Chase, of counsel), for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Craig A. Chapello, Robert Marc Chemers, and Robert J. Franco, of counsel), for appellees.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

On July 23, 1982, plaintiff, Rita Behr, filed this action against the original defendant, Club Med, Inc. (CMI), a Delaware corporation, for personal injuries allegedly sustained at the Club Med resort in Cancun, Mexico, in January 1981. On October 3, 1984, plaintiff filed a fourth-amended complaint adding Club Mediterranee, S.A. (CMSA), a French corporation, as a party defendant. On November 26, 1986, the trial court granted CMI's motion for summary judgment. On September 15, 1987, the court granted CMSA's motion for summary judgment. Thereafter, the trial court granted CMI's motion to strike plaintiff's fifth-amended complaint and denied plaintiff leave to file a sixth-amended complaint. Plaintiff appealed separately from the adverse orders in CMSA's and CMI's favor. The appeals have been consolidated.

Plaintiff's original complaint alleged that, pursuant to a contract with "Club Med," plaintiff became a guest at its Cancun resort from January 5 to January 12, 1981. It further alleged that sometime during her stay she ingested what was later discovered to be a toothpick while eating food at "Club Med" and that the toothpick had lodged in her liver. On April 9, 1984, CMI moved for summary judgment on the ground that CMSA owned and operated the Cancun resort. Plaintiff's fourth-amended complaint alleged for the first time, and in the alternative, that in January 1981: (1) the Cancun resort was owned, operated and maintained either by CMI *and* CMSA, by CMI or by CMSA. On September 15, 1987, the trial court granted CMSA leave to file the affirmative defense of the bar of the two-year statute of limitations applicable to personal injury actions (Ill. Rev. Stat. 1981, ch. 110, par. 13—202) and granted its motion for summary judgment based on that defense.

In appealing the grant of summary judgment in CMSA's favor, plaintiff contends that the requirements of section 2—616(d) of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—101 *et seq.*) were met in this case. Section 2—616(d) allows relation back of a cause of action adding a new defendant to the date of filing of an original complaint to avoid a limitations bar where: (1) the original complaint was timely filed; (2) the failure to originally join the new defendant was inadvertent; (3) service of summons was in fact had upon the person, his agent or partner; (4) the new defendant knew that the action was pending and grew out of a transaction or occurrence involving or concerning him before the limitations period expired; and (5) the cause of action asserted in the amended complaint

grew out of the same transaction or occurrence set up in the original complaint. (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(d).) At issue in this case are the second, third and fourth requirements of section 2—616(d).

Asserting that she met the second requirement of section 2—616(d), plaintiff argues that, contrary to the trial court's conclusion, the failure to join CMSA until six months after CMI filed its summary judgment motion, alleging that CMSA owned and operated the Cancun resort, was excusable inadvertence, not inexcusable neglect. In support, she cites *Bates v. Wagon Wheel Country Club, Inc.* (1971), 132 Ill. App. 2d 161, 266 N.E.2d 343.

In *Bates*, the plaintiff filed a personal injury suit against the Wagon Wheel Lodge Hotel on April 24, 1968, approximately one month before the limitations period expired. On January 24, 1969, the attorney for the Wagon Wheel Country Club, Inc., and Wagon Wheel Enterprises, Inc., informed plaintiff's counsel that he had sued the wrong defendant. On May 8, 1969, the latter two entities filed a special and limited appearance. At the May 15, 1969, hearing thereon, it was established that no such entity as Wagon Wheel Lodge Hotel existed and that the real parties in interest included Wagon Wheel Country Club, Inc., and Wagon Wheel Enterprises, Inc. After the special and limited appearance was granted on September 25, 1969, plaintiff filed an amended complaint against the latter two entities in early October 1969.

The *Bates* court was called upon to determine whether the plaintiff's failure to join the proper defendants had been inadvertent. The defendants contended that plaintiff had acted unreasonably in failing to join them until approximately 8½ months after being informed of his mistake in January 1969. In rejecting the argument, the court distinguished the *Bates* case from *Fields v. 6125 Indiana Avenue Apartments, Inc.* (1964), 47 Ill. App. 2d 55, 196 N.E.2d 485, in which the plaintiff had been informed of the true defendants eight months before the statute of limitations expired but failed to join them until its expiration. In contrast to *Fields*, the *Bates* court concluded that the plaintiff therein did not learn who the proper defendants were until May 15, 1969, by which time the statute had run by almost one year. The court found nothing unreasonable in the plaintiff's two-week delay in joining the defendants, which it measured from September 25, when their special and limited appearance was granted, to early October 1969.

Thus, for reasons which it did not elaborate, the *Bates* court apparently concluded that the phone call from the correct defendant's

attorney to the plaintiff's attorney did not put the plaintiff on notice of their identity. Although the *Bates* court's finding of inadvertence essentially ignored that phone call, plaintiff argues that, measured against the 8½-month delay in *Bates*, her delay of six months in joining CMSA, measured from the date of CMI's motion for summary judgment, was also not unreasonable.

CMSA disagrees with plaintiff's calculation of the delays in both *Bates* and this case. It notes the *Bates* court's finding of only a two-week delay, not an eight-month delay, in joining the new defendants. Additionally, CMSA asserts that plaintiff was put on notice of its identity and existence for the first time on January 4, 1983, when CMI filed its motion to quash service for lack of jurisdiction. In support of that motion, CMI appended the affidavit of its president, Jacques Ganin. Therein, Ganin stated, *inter alia*:

> "3. Club Med, Inc. is engaged in the business of wholesale and retail [*sic*] in the United States, Canada and Puerto Rico of vacation packages, which include land accommodations at various Club Mediterranee resorts."

CMSA further asserts that plaintiff was again notified of its existence on March 8, 1983, during the discovery deposition of Richard J. Carrick, the Midwest regional sales manager for CMI. We agree with CMSA, although not for the sole reason that it cites. During his deposition, Carrick was asked who owned "the Club Med vacation Villages." He answered, "They are run by Club Mediterranee, S.A. The actual owning process is individual to each country that they are in." He was next asked who owned the Cancun, Mexico, facility. CMSA quotes his answer thusly in its brief, " 'I couldn't say who owns it, but Club Med [referring to Club Mediterranee, S.A.] runs it.' "

■ Even considering that just prior thereto Carrick stated that "Club Mediterranee, S.A." ran the "Club Med" vacation villages, we cannot construe his statement that "Club Med" ran the Cancun, Mexico, facility as clearly and unambiguously "referring" to CMSA. That fact notwithstanding, we believe that Carrick's deposition testimony as a whole was sufficient, when read in context, to put plaintiff on notice that CMSA rather than CMI was the proper party defendant.

At Carrick's deposition, plaintiff's counsel asked the following questions and received the following answers:

> "Q. And what is the primary function or mission *** of Club Med, Inc.?
>
> A. To promote Club Med sales in the United States.
>
> Q. Now, when you say 'Club Med sales,' are you referring to vacations in Club Med facilities around the world?

A. That is how we are involved in is [*sic*] promoting Club Med sales to our Club Med vacation villages around the world.

Q. And do you know who owns the Club Med vacation villages?

A. They are run by Club Mediterranee, S.A., The actual owning process is individual to each country that they are in.

Q. *** [T]he facility in Cancun, Mexico, who owns that?

A. I couldn't say who owns it but Club Med runs it.

Q. Who would know who owns it?

A. The president of Club Med, Inc. ***.

Q. Mr. Ganin?

A. Yes.

Q. So Mr. Ganin could explain the ownership of the clubs around the world?

A. Sure.

Q. What is the relationship between Club Med, Inc, and Club Mediterranee, S.A.?

A. Club Mediterranee, S.A. is the parent company, Club Med, Inc. is the sales representative for Club Mediterranee, S.A. in the United States."

Additionally, Carrick later informed plaintiff's counsel that, to the best of his knowledge, "Club Med, Inc." was "completely owned by Club Mediterranee."

When read in context, we believe that Carrick's answers to questions by plaintiff's counsel were more than sufficient to put her on notice of: (1) the fact that CMI was merely a promotional entity and wholly owned subsidiary of CMSA; (2) a likelihood that CMSA, not CMI, owned or operated the "Club Med" vacation villages, including the Cancun resort; and (3) the fact that CMI's president, Jacques Ganin, could definitely inform plaintiff as to the ownership of the Cancun resort.

We believe that this notice required plaintiff to conduct further timely investigation into the ownership and operation of the Cancun resort. However, plaintiff did not institute any written discovery in this case until February 10, 1986, almost three years after Carrick's deposition, when she propounded interrogatories to CMI seeking, *inter alia*, information regarding the ownership of the Cancun resort and CMI. Plaintiff's failure to institute discovery likely to reveal and lead to the joining of the proper parties defendant in the face of the facts of which she was apprised cannot be classified as inadvertence.

■ We find that plaintiff was apprised of the existence of CMSA and the likelihood that it was the proper party defendant in March

1983 rather than April 1984. As such, we do not find *Bates* apposite. Even if we agreed with plaintiff that there was an 8½-month delay in that case from the time the plaintiff learned of the correct defendants' identities to the time they were joined, the delay in this case from the time plaintiff should have learned of CMSA's existence to the time it joined CMSA was 17 months, twice the length of the delay in *Bates*.

As plaintiff notes, Illinois courts look less harshly upon a post-limitations period joinder of a defendant identified only after the expiration of the period than they do upon the same type of joinder of a defendant identified before a limitations period expires. (*Bates v. Wagon Wheel Country Club, Inc.* (1971), 132 Ill. App. 2d 161, 164, 266 N.E.2d 343; *Shiner v. Friedman* (1987), 161 Ill. App. 3d 73, 81, 513 N.E.2d 862.) However, we cannot agree that that relaxed standard works to excuse a plaintiff from acting with reasonable diligence once she learns sufficient facts to lead her to the identity of the proper defendant. In this regard, even if we disagreed with the trial court that six months was an unreasonable length of time for joining CMSA, we would still find 17 months to be unreasonable.

In *Shiner*, the plaintiff sued Myron & Phil's Northbrook Corporation for injuries sustained in a "Myron and Phil's Restaurant" on July 2, 1980. Myron Friedman was served with summons in December 1981. On January 20, 1986, the plaintiff deposed Myron and learned that he and his brother, Phil Friedman, owned the restaurant as partners. The plaintiff joined the Friedmans as partners one week later. The court found that plaintiff was first given notice of the proper defendant on October 12, 1982, when Myron had answered interrogatories. Although it found the plaintiff "clearly negligent" in failing to join the partners as defendants until approximately four years after she first learned of her mistake, the court affirmed the denial of a motion to dismiss the amended complaint.

In so doing, the court noted the *Bates* court's observations that " '[w]hen the defendant has notice from the beginning of the suit of the claim against it, the reason for statutes of limitations is not as important. *** It was never intended that such statutes would be the means by which a corporation could escape liability of a tort claim *** by confusing its identity through a complex intermingling of its corporation names and structure with that of other similar corporations.' " (*Shiner*, 161 Ill. App. 3d at 81-82, quoting *Bates*, 132 Ill. App. 3d at 167.) The court concluded that allowance of the amended complaint had not been an abuse of discretion. The court relied on the fact that, since the Friedmans had notice of the suit from the beginning, had

completed discovery, and had a fair opportunity to investigate the circumstances of liability, they had not been prejudiced by the amendment. *Shiner*, 161 Ill. App. 3d at 81-82.

There are no facts present here similar to those which the *Shiner* court considered in allowing the relation back of the amended complaint. That is, there is no indication in the record that CMSA knew of plaintiff's action when it was originally filed. CMI, through its registered agent, not CMSA in any capacity, was served with summons. Moreover, as plaintiff propounded no discovery before the limitations period ran, CMSA could not have participated in, let alone completed, any discovery.

Attempting to show an "extensive interrelationship and close identity of interest" between CMI and CMSA to support her assertion that she met the service and notice requirements of sections 2–616(d)(3) and (d)(4), plaintiff notes, *inter alia*, that: at least five times per year, representatives of CMI and CMSA meet to discuss business; (based on the fact that the president of CMI was formerly with CMSA) CMI and CMSA interchange personnel; CMI and CMSA have established a system for communicating customer complaints; CMI has the exclusive right to sell "Club Med" vacations at "Club Med" villages worldwide; and one law firm represented both CMSA and CMI below. She further notes that, at the time of her injury, CMSA owned 100% of CMI and that, presently, CMSA owns 72% of CMI by virtue of its 72% ownership of Club Med, a Cayman Islands company, which owns 100% of Club Med Holding, a Dutch Antilles company, which owns 100% of Club Med Finance, a Netherlands company, which owns 100% of CMI.

■ These facts are insufficient to positively reveal that CMSA learned of plaintiff's claim during the limitations period. We will not presume from these facts, as plaintiff seems to suggest that we should, that CMSA must have learned of her claim by January 1983. Contrary to plaintiff's assertion, we find nothing in the record showing that CMI's and CMSA's Illinois counsel in this appeal, the law firm of Pretzel & Stouffer, assumed its representation in the trial court from the New York law firm of Kroll, Tract, Powerantz & Cameron. Rather, the record reveals that Pretzel & Stouffer assumed representation of CMSA from the Chicago law firm of Garbutt & Jacobson in December 1986 and of CMI from Chicago attorney John W. Clifford in January 1987.

Additionally, at oral argument, plaintiff's counsel asserted that she was "sure" CMI had informed CMSA of plaintiff's claim in view of the fact that CMSA had agreed to indemnify CMI for any claims

against it arising from personal injuries to purchasers of vacations at CMSA's resorts. This assertion, however, ignores that CMSA never admitted that documents entitled "Sales Agency Agreement" and "Consignment Agreement," of which the agreements to indemnify were a part, were in force in 1981 and 1983, as plaintiff sought to have CMSA do through discovery. In fact, CMSA objected to plaintiff's request to admit facts, and their dispute with respect thereto was never resolved by the trial court. Plaintiff's assertion also ignores that the trial court struck a copy of the "Consignment Agreement" which she appended to her response to CMSA's motion for summary judgment. Therefore, there is no record basis for accepting plaintiff's inference from any indemnity agreement that CMI informed CMSA of her claim during the limitations period.

Plaintiff also relies on *Schlunk v. Volkswagenwerk Aktiengesellschaft* (1986), 145 Ill. App. 3d 594, 495 N.E.2d 1114, *aff'd* (1988), 486 U.S. 694, 100 L. Ed. 2d 722, 108 S. Ct. 2104, in support of her assertion that the requirements of sections 2—616(d)(3) and (d)(4) were satisfied here as a result of the fact that CMI was the wholly owned subsidiary of CMSA at the time of her injury. However, we find neither *Schlunk* nor one of the principal cases upon which it relied, *Maunder v. DeHavilland Aircraft of Canada, Ltd.* (1984), 102 Ill. 2d 342, 466 N.E.2d 217, *cert. denied* (1984), 469 U.S. 1036, 83 L. Ed. 2d 401, 105 S. Ct. 511, of any avail to plaintiff.

*Schlunk* and *Maunder* held that subsidiary corporations were, by operation of law, the agents of their foreign parent corporations for service of process and that the parent corporations were fully apprised thereby of the pendency of the plaintiffs' claims. However, contrary to plaintiff's implication, they were not solely based on the fact that the subsidiary corporations were wholly owned by their parent corporations. Rather, they were equally based on the degree of control which the parent corporations exercised over the subsidiaries. See *Maunder*, 102 Ill. 2d at 346-50; *Schlunk*, 145 Ill. App. 3d at 603-04.

We do not find that the facts relied upon by plaintiff to show a close relationship between CMSA and CMI meet her burden as established in *Maunder* and *Schlunk*. As such, we cannot conclude, contrary to the apparent finding of the trial court, that service of process upon CMSA was not an issue herein or that plaintiff satisfied the requirements of sections 2—616(d)(3) and (d)(4).

Given the lack of any positive indication in the record that CMSA learned of the claim which plaintiff had against the owner/operator of the Cancun resort during the limitations period and the inapplicability of *Schlunk* and *Maunder* to her case, we cannot find that CMSA had

an adequate opportunity to investigate that claim while the facts were still accessible to it. This conclusion requires no determination of what is an "adequate" opportunity since it is the purpose of statutes of limitations to afford such an opportunity. *Shiner v. Friedman* (1987), 161 Ill. App. 3d 73, 81-82, 513 N.E.2d 862.

Plaintiff also notes that the fact that corporations confuse their identities through complex intermingling of their corporate names and structures is another factor militating in favor of allowing an amended complaint to relate back. (*Shiner*, 161 Ill. App. 3d at 82, quoting *Bates*, 132 Ill. App. 2d at 167.) In this regard, plaintiff notes the similarity in the names of CMI and CMSA as well as the chain of subsidiaries through which CMSA owns CMI.

■ The fact that corporations confuse their identities does not *alone* justify allowing the relation back of an amended complaint. While the similarity in the names of CMSA and CMI is patent, we do not find that it misled plaintiff into believing that, in suing CMI, she had sued all the proper defendants. Rather, that belief resulted from plaintiff's failure to take cognizance of the notice which she had been given regarding the existence of CMSA. (*Cf. Latshaw v. Humphreys Leather Goods Co.* (1972), 5 Ill. App. 3d 98, 283 N.E.2d 71 (relation back allowed where plaintiff relied on title search and sign on building incorrectly identifying its owners in joining same).) Nor do we believe that the hierarchy of corporations with similar names through which CMSA owns CMI justifies avoidance of the statute of limitations absent a contention that it prevented plaintiff from discovering who her claim properly lay against. (*Cf. Corn v. Lorain Division, Koehring Co.* (1981), 94 Ill. App. 3d 152, 418 N.E.2d 809 (relation back allowed where identity of proper defendant, Amax, Inc., was buried in confusing and conflicting discovery references thereto and to the original defendant, Amax Coal Co., Inc.).) Where, as here, a plaintiff does not institute any written discovery to determine whether she has sued either the proper defendants or all of them, such a hierarchical ownership is irrelevant. This is not a case in which, during the time a limitations period was running, a plaintiff was forced to trace the ownership of a business through a long line of subsidiary corporations to their corporate parent.

Plaintiff also asserts that, since she would otherwise be left without a remedy for her injuries, allowing joinder of CMSA will further the ends of justice, the ultimate test of a trial court's exercise of discretion under section 2—616(d) (*Campbell v. Feuquay* (1986), 140 Ill. App. 3d 584, 590, 488 N.E.2d 1111). She also asserts that CMSA will not be prejudiced by such a result, prejudice and surprise also being

factors in the determination. *Shiner v. Friedman* (1987), 161 Ill. App. 3d 73, 80, 513 N.E.2d 862.

■ We cannot agree that allowing plaintiff's amended complaint against CMSA to stand would further the ends of justice. Such a result would sanction plaintiff's ignoring facts which were sufficient to put her on notice of the proper defendant to be held liable for her injuries and to obligate her to join that defendant in a timely manner to afford it a fair opportunity to investigate the facts. Such a result would sanction active neglect rather than mere inadvertence. Because CMSA did not know of plaintiff's claim during the limitations period, we likewise cannot agree that it would not be prejudiced by allowing plaintiff's amended complaint.

Next, plaintiff asserts that the trial court erred in allowing CMSA, after the dismissal of CMI, to amend its answer to the fourth-amended complaint to plead the affirmative defense of the statute of limitations. Plaintiff asserts that, by failing to plead the defense in its original answer to that complaint, CMSA waived the defense. We disagree.

■ The failure to plead an affirmative defense, such as a statute of limitations, does not constitute waiver. Rather, a trial court may, in its sound discretion, allow a defendant to file an amended answer raising affirmative matter anytime prior to the entry of a final judgment. (*Uscian v. Blacconeri* (1975), 35 Ill. App. 3d 80, 340 N.E.2d 618.) *People ex rel. Foreman v. Village of Round Lake Park* (1988), 171 Ill. App. 3d 443, 447-49, 525 N.E.2d 868, upheld the right to amend an answer to plead a statute of limitations defense even though the defense had been available from the date the action was filed, almost 4½ years before amendment was sought. The court did so on the grounds that, as in this case, trial had not begun, the defense did not require further investigation by either party, and, if upheld, it would eliminate the necessity and expense of a trial. The trial court here did not abuse its discretion.

In appealing the orders in CMI's favor, plaintiff contends that the fifth-amended complaint, which she filed after the trial court granted CMI summary judgment on the fourth-amended complaint, stated a cause of action based on a theory of undisclosed principal. In support, plaintiff cites *Rosen v. Deporter-Butterworth Tours, Inc.* (1978), 62 Ill. App. 3d 762, 379 N.E.2d 407. *Rosen* involved an action against a travel agency for breach of a contract to arrange the plaintiff's inclusion in a tour conducted by an independent sponsor. The court held the travel agency liable as the tour sponsor's undisclosed agent. In doing so, the court noted that the relationship between a travel bureau and

a tour sponsor has been held to be an agency relationship as far as the liability of such bureaus for tortious injuries to a traveler was concerned. (*Rosen*, 62 Ill. App. 3d at 766, citing Annot., 53 A.L.R. 3d 1310 (1973).) Plaintiff deduces from the foregoing observation that the *Rosen* court could not have been clearer in its intention to hold a travel bureau liable for tortious injuries to a traveler.

■ Notwithstanding the clarity with which the *Rosen* court may have expressed that intention or the case law from foreign jurisdictions supporting that result (Annot., 53 A.L.R. 3d 1310 (1973)), holding CMI liable for the torts of CMSA as its undisclosed agent would be contrary to the law of agency. It is a general rule of agency that an agent is not liable for torts committed by his principal personally. (3 C.J.S. *Agency* §379, at 203 (1973); *Dorkin v. American Express Co.* (1973), 74 Misc. 2d 673, 345 N.Y.S. 2d 891, 893, *aff'd* (1974), 43 A.D.2d 877, 351 N.Y.S. 2d 190.) In other words, an agent's liability "is based on the duty which he himself owes to the third person." In most jurisdictions it is that duty which is the test of liability. An agent is not liable merely because his principal fails to discharge affirmative duties which the principal owed to the third person. (3 Am. Jur. 2d *Agency* §309, at 815 (1986).) *Rosen* does not contradict this rule.

■ While it was held to be the undisclosed agent of the tour sponsor, the defendant travel agency in *Rosen* was held liable only for breaching its duty to the plaintiff to keep the tour sponsor apprised of his whereabouts before the tour began. Although CMI may have been CMSA's undisclosed agent for purposes of marketing vacations at the Cancun resort, CMI owed no duty to plaintiff with regard to plaintiff's stay there, including the serving of food. Any duty in that regard was owed to plaintiff by CMSA, which, the theory of undisclosed agency presupposes, owned and operated the Cancun resort.

■ Plaintiff next contends that the trial court abused its discretion in denying leave to file a sixth-amended complaint asserting constructive fraud. While we could discuss at length the parties' arguments on this issue, we are not obligated to do so. Plaintiff has not included the proposed sixth-amended complaint in the record on appeal. We must therefore assume that denial of leave to file that complaint was not an abuse of discretion or prejudicial to plaintiff. *Lowrey v. Malkowski* (1960), 20 Ill. 2d 280, 285, 170 N.E.2d 147, *cert. denied* (1961), 365 U.S. 879, 6 L. Ed. 2d 191, 81 S. Ct. 1029; *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 898, 275 N.E.2d 429.

Plaintiff next contends the trial court erred in granting summary judgment for CMI on the fourth-amended complaint. Plaintiff asserts that she should have been allowed to proceed against CMI on the

fourth-amended complaint on the ground that CMI and CMSA were acting as joint venturers in marketing Club Med vacations. We cannot agree.

The fourth-amended complaint contained identical counts against CMI and CMSA alleging that: each had a duty "to use ordinary care when preparing and serving food which would be safe for its patrons"; in breach of that duty, each, through its agents and employees, negligently "[s]erved food with a hidden toothpick" and "[f]ailed to warn plaintiff" thereof. The fourth-amended complaint totally lacked any allegations of joint venture and did not seek to hold CMI liable as a joint venturer with CMSA. We thus cannot agree with plaintiff that the fourth-amended complaint presented any genuine issues of material fact with respect to CMI's liability as a joint venturer with CMSA which precluded a summary judgment for CMI.

■■ ■ In order to maintain a cause of action based on a specific theory of liability, all of its essential elements must be specifically alleged in the complaint. (*Richmond v. Hahn* (1985), 134 Ill. App. 3d 947, 948, 481 N.E.2d 943.) Insofar as a theory of vicarious liability based on a joint venture is concerned, those elements are: (1) a community of interest in the purpose of the joint venture; (2) a right to direct and govern the policy and conduct of the other joint venturer; and (3) a right to joint control and management of the property used in the joint venture. (See *Barton v. Evanston Hospital* (1987), 159 Ill. App. 3d 970, 513 N.E.2d 65.) Pleadings are to be liberally construed with a view to doing substantial justice between the parties. (Ill. Rev. Stat. 1985, ch. 110, par. 2—603(c).) Moreover, no pleading is insufficient which contains such information as reasonably informs an opponent of the nature of the claim or defense it is called upon to meet. (Ill. Rev. Stat. 1985, ch. 110, par. 2—612(b).) However, no amount of liberal construction of the fourth-amended complaint could have cured its total failure to allege the elements of a joint venture and to thus inform CMI that plaintiff's claim was in the nature of vicarious liability predicated on a theory of joint venture with CMSA. See *Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 711, 491 N.E.2d 795.

■■ Nor can plaintiff's attempt to avoid her failure to allege the elements of a joint venture in her fourth-amended complaint by way of argument on appeal be successful. Defects in pleadings cannot be cured by argument. (*Burnett v. Donath* (1984), 127 Ill. App. 3d 131, 468 N.E.2d 501.) Plaintiff should have included the allegations she makes on appeal regarding the elements of the joint venture between CMI and CMSA in her fourth-amended complaint. As she did not, we

conclude that CMI was properly awarded summary judgment thereon.

For the reasons stated herein, the orders appealed from are affirmed in their entirety.

Affirmed.

RIZZI and WHITE, JJ., concur.