(No. 60205.—

CHARLES J. WERNOWSKY *et al.*, Appellees, v. ECONOMY FIRE & CASUALTY COMPANY, INC., Appellant.

*Opinion filed March 29, 1985.*

Jonathan H. Barnard and Mark A. Drummond, of Schmiedeskamp, Robertson, Neu & Mitchell, of Quincy, for appellant.

Michael G. Cheronis and Ronald J. Mentone, of Oak Park, for appellees.

JUSTICE MILLER delivered the opinion of the court:

The plaintiffs, Charles Wernowsky and Barbara Wernowsky, brought this action to recover the proceeds

of a homeowner's insurance policy issued by the defendant, Economy Fire & Casualty Company, Inc., and for penalties for the defendant's refusal to settle their claim. The claim arose from a fire at the plaintiffs' home. Following a bench trial in the circuit court of Adams County, the court held that the defendant was not liable for the loss. The court found that Charles Wernowsky had set the fire, either by himself or with the aid of another, and that Barbara Wernowsky had taken part in the ensuing attempt to defraud the defendant. Accordingly, the trial judge entered judgment for the defendant on its affirmative defense that the plaintiffs had submitted a fraudulent proof of loss. The appellate court reversed that judgment, concluding that a new trial was necessary because evidence of the plaintiffs' other recoveries for fire losses had been admitted without a sufficient foundation. (122 Ill. App. 3d 891.) We allowed the defendant's petition for leave to appeal (94 Ill. 2d R. 315(a)) and now affirm the decision of the appellate court.

The fire in question here occurred on January 1, 1982, in Quincy; firefighters arrived at the plaintiffs' house shortly before 9 a.m. that day. They found no one on the premises. Two arson investigators testified in the defendant's behalf at trial, and both of them believed that the fire was incendiary in origin. One of the investigators, a firefighter who had responded to the call, estimated that the house had been burning for 15 or 20 minutes before his arrival.

At trial the plaintiffs vigorously contested the evidence that the fire was incendiary in origin, though they did not present in their own behalf any expert testimony regarding the cause of the fire. Additionally, they denied having any part, either intentional or accidental, in causing the fire at their home. Charles Wernowsky testified that at the time of the fire he was at a friend's house in

Quincy, that his wife, Barbara, was in Rock Island, and that their two children were in St. Louis. Wernowsky spent the night preceding the fire drinking at several taverns. He and a friend, John Knowles, left the last tavern at about 5 or 5:30 a.m. on January 1 and went to Knowles's house, where Wernowsky fell asleep and later learned that his house was burning. This was corroborated by Knowles, who testified that he received a telephone call at about 9 or 9:30 a.m. reporting the fire at the Wernowskys' house.

According to Wernowsky, he and his wife paid $31,500 for the house in 1978, remodeled it extensively, and at the time of the fire were trying to sell it for $59,500; it was insured for $45,000. Mr. Wernowsky testified that his net pay at that time was $800 a week. He also testified about crimes that had been committed against his property over a period of several years, to suggest that the fire, if it was incendiary, might have been set by an enemy or vandal.

Defense counsel was permitted, over objection, to question Mr. Wernowsky about other fire losses that he had incurred. This testimony revealed that three other buildings owned in whole or in part by the plaintiffs had burned, and all three of those losses had resulted in insurance recoveries. The first fire occurred in 1977 at the plaintiffs' home in Quincy. The plaintiffs paid $15,000 for the property, lived there for seven months, and recovered from their insurer $25,000 for the destruction of the house and $12,000 for the destruction of its contents. The second fire occurred in 1979 in Marblehead, Illinois, in a building that was being operated as a children's game room. The Wernowskys were co-owners of the property with John Knowles and his wife. The purchase price was $1,500, the period of ownership preceding the fire was four or five months, and the amount recovered was $4,500. The third fire also occurred in 1979,

at a summer house in the Quincy area that the Wernowskys owned together with the Knowleses. There, the purchase price was $15,000, the period of ownership preceding the fire was eight or nine months, and the amount recovered was $30,000. Mr. Wernowsky explained that in none of those instances did the insurer dispute the validity of the claim.

The trial judge regarded the other fire losses and insurance recoveries as relevant evidence of the plaintiffs' motive here, and in ruling for the defendant he expressly relied on that proof.

The appellate court ordered a new trial, agreeing with the plaintiffs that the evidence of the other insured fire losses was inadmissible without some showing of the wrongful or fraudulent nature of those claims.

The defendant argues at the outset that the plaintiffs invited the error that they now complain of by objecting at trial to evidence of the suspicious circumstances surrounding one of the fires. From our review of the record, however, we conclude that the plaintiffs' objection was to the entire line of evidence, not just to the details of the fire. The plaintiffs were not adopting the view that the evidence of other recoveries would be admissible without an appropriate foundation.

Evidence of crimes, wrongs, or acts other than the one at issue may be admissible if offered for some purpose other than as proof merely of a person's disposition to behave in a certain way. (*People v. Bartall* (1983), 98 Ill. 2d 294; *Joseph Taylor Coal Co. v. Dawes* (1906), 220 Ill. 145; see Fed. R. Evid. 404(b).) The purpose here of the evidence of the other fire losses and insurance recoveries, the defendant maintains, was as proof of motive. In admitting the evidence the trial judge said that it was "for the limited purpose of showing motive." Later, in explaining his ruling, he said:

"The Court obviously did not want to—nor is it proper in my opinion—consider all of the circumstances surrounding these claims. Thus to do so would be, in essence, to place the Plaintiffs in this case on trial for claims that have already been honored and paid by insurance companies.

The Court cannot consider nor do I in my admission of that evidence suggest that I will allow that evidence to be considered by me for purposes of suggesting that those other fires were incendiary in nature or were arson or were intentionally set by the Plaintiffs, only that there would be a motive to permit or allow fires such as those to exist and come into being so that money could be obtained as a result.

The obvious probative value is to then show that there would be a motive to allow something of that nature to occur in the case before the Court."

Finally, in a written judgment order the court said:

"It seems clear to the Court that such evidence is relative [sic] and probative of the issue of whether or not the Plaintiffs in this case at bar would have and did have a financial motive to cause a fire loss and resulting claim against the Defendant insurance company."

There were two primary questions of fact at trial: whether the fire was incendiary, and whether the plaintiffs were the ones responsible for setting it. The trial judge's use of the other fire losses and insurance recoveries as evidence of "motive" extended to both those questions, which gave the evidence two distinct uses here: to show that the fire was intentional rather than accidental, and to show the identity of the person responsible for setting it. In light of the strong, independent proof that the fire was deliberately set, the more important use here for the evidence was as proof that it was set by the plaintiffs.

We hold that the foundation that was presented at trial for the evidence of the other fires and insurance recoveries was insufficient, given the purposes to which

the evidence was put. The foundation simply comprised, in each instance, the plaintiffs' ownership interest in the property, the occurrence of a fire there within months of its purchase, and the recovery of an amount of insurance exceeding the purchase price. There was no showing that the other fires were incendiary or even suspicious in origin, much less that either of the plaintiffs played a part in setting them. Nor was there even evidence that the amounts recovered in excess of the purchase prices represented profit. Thus, there was no evidence tending to connect the plaintiffs to the commission of the other fires.

In a criminal prosecution, evidence of other crimes is not admissible unless some showing is made that the other crime was actually committed and that the defendant took part in it (*People v. Gugliotta* (1980), 81 Ill. App. 3d 362 (arson); *People v. Miller* (1977), 55 Ill. App. 3d 421 (arson)); proof of the other crime need not be made beyond a reasonable doubt (*People v. Miller* (1977), 55 Ill. App. 3d 421). Similarly, in a civil action when arson is asserted as a defense, evidence of another fire loss suffered by an insured is not admissible as proof of motive without showing more than what was brought out here, the bare statement that the insured had collected insurance from other fires. The cases suggest that an adequate foundation would contain some showing that the other fires were incendiary in origin and some evidence, either direct or circumstantial, that the insureds participated in them. (See *Warner v. Transamerica Insurance Co.* (8th Cir. 1984), 739 F.2d 1347 (district court did not err in excluding evidence); *Garcia v. Aetna Casualty & Surety Co.* (5th Cir. 1981), 657 F.2d 652 (district court committed prejudicial error in admitting evidence).) In *Smith v. State Farm Fire & Casualty Co.* (5th Cir. 1980), 633 F.2d 401, 403, the court said:

"The district court cannot be faulted for refusing to admit the mere fact [that the policyholder] had owned five insured buildings destroyed by fire. Without more, the relevancy of such evidence is highly questionable and the prejudice would be great."

We conclude that the evidence of the other fire losses and insurance recoveries was not admissible. There was no evidence that the earlier fires were incendiary in origin, much less that the plaintiffs were responsible for them. The evidence demonstrated, at most, the plaintiffs' knowledge or awareness that a fire could lead to a recovery of insurance. That much is shown by the mere decision to obtain a policy insuring against that risk, however. Evidence of the defendant's recovery of insurance from two other fires was introduced into evidence in *United States v. Neary* (2d Cir. 1984), 733 F.2d 210, a criminal prosecution alleging, among other crimes, the defendant's malicious use of an explosive to destroy a building that he owned. No attempt was made, however, to show that the defendant set the other fires or even that they were incendiary in origin. The court found that the primary purpose for the evidence was as proof of identity—that it was the defendant who caused the explosion—and said:

"Absent some direct or circumstantial evidence that the prior fires were incendiary in origin, the mere fact that [the defendant] collected insurance from those fires is hardly relevant to the issue of whether he set the fire that is the subject of the present indictment. There is nothing unique or unusual about a person's knowledge that when his insured house burns he can collect on the policy; that is a matter of common knowledge." (733 F.2d 210, 217.)

The court concluded that the prejudicial effect of the evidence outweighed whatever probative value it might have.

Relying on *Hammann v. Hartford Accident & Indem-*

*nity Co.* (6th Cir. 1980), 620 F.2d 588, *Terpstra v. Niagara Fire Insurance Co.* (1970), 26 N.Y.2d 70, 256 N.E.2d 536, 308 N.Y.S.2d 378, and *Raphtis v. St. Paul Fire & Marine Insurance Co.* (S.D. 1972), 198 N.W.2d 505, the defendant argues that evidence of other insurance recoveries for fire losses is admissible without more. Each of those cases was an action by a policyholder to collect insurance following a fire loss, and in each case evidence of other recoveries of insurance for fire losses was introduced. In *Hammann* evidence of the circumstances surrounding four other recoveries was excluded, as well as evidence of two other fires that did not result in recoveries of insurance. In *Raphtis* and *Terpstra* the evidence of the earlier recoveries apparently was similarly limited, consisting only of the information that the fires had occurred and that insurance had been collected for them. Those cases are distinguishable, however. Although the insureds there argued that the evidence was irrelevant and prejudicial, they did not question the foundation for it, and the opinions do not address the issue raised here, the sufficiency of the foundation for the evidence. Moreover, in *Raphtis*, in affirming the judgment for the insurer, the court expressly did not rely on the evidence of the other fire losses and insurance recoveries. In *Terpstra* the insurer was allowed to introduce into evidence the insured's confession to police that he had set the fire at issue; one of two earlier recoveries for fire losses was referred to in the confession, which contained the insured's explanation that the earlier recovery had given him the idea of committing arson.

The defendant also observes that the recovery of insurance for a fire loss means, in essence, that evidence of arson either failed or was not attempted. Therefore, the defendant believes that requiring a fuller foundation for the evidence of the other recoveries is an unreasona-

ble burden and would oblige it to show now what could not be established earlier. That evidence is irrelevant, however, unless some connection is made between the insureds and the commission of the other fires.

We conclude that the evidence of the other fires and insurance recoveries was improperly admitted and that a new trial is required, and therefore we affirm the judgment of the appellate court.

*Judgment affirmed.*