JOSINE PLOOY, Plaintiff-Appellant and Cross-Appellee, v. HAROON PARYANI *et al.,* Defendants-Appellees and Cross-Appellants.

First District (5th Division)   No. 1—94—2041

Opinion filed October 13, 1995.

Paul K. Vickrey and Mary Kay McCalla, both of Hopkins & Sutter, of Chicago, for appellant.

William V. Johnson, of Johnson & Bell, Ltd. (Thomas H. Fegan and Kelly N. Warnick, of counsel), and Allen L. Wiederer, both of Chicago, for appellees.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

The plaintiff, Josine Plooy, filed a complaint alleging a battery by defendant, Haroon Paryani, in a taxi fare dispute. The complaint also alleged counts of vicarious liability against defendants Checker Taxi Association (Checker Taxi) and Checker Motors Corporation. A jury returned a verdict for the plaintiff against all the defendants, awarding her $152,500 in compensatory damages against all the defendants and $150,000 in punitive damages against Checker Motors and Checker Taxi. The trial court granted the defendants' motion for judgment notwithstanding the verdict (judgment *n.o.v.*) as to the count for punitive damages, but the trial court denied the defendants' other post-trial motions. The plaintiff appeals the court's grant of judgment *n.o.v.*, while all three defendants have cross-appealed the court's denial of judgment *n.o.v.* as to the plaintiff's compensatory damages, claiming that the plaintiff did not demonstrate that her injuries resulted from Paryani's battery. In addition, Checker Motors' cross-appeal claims that the court erred in allowing the plaintiff to add Checker Motors as a defendant after the expiration of the statute of limitations on the plaintiff's claim; Checker Taxi's cross-appeal claims that the court erred in requiring a jury instruction which conceded Paryani's agency with Checker Taxi and

precluded the jury's consideration of the issue; and Paryani's cross-appeal claims the court erred by allowing the plaintiff to testify that the defendants' investigator offered her $200 to settle her claim.

We reverse the judgment against the defendants, and we remand this cause for a new trial as to defendants Paryani and Checker Taxi.

### BACKGROUND

On August 25, 1989, the plaintiff entered a taxi driven by Paryani. Paryani leased his taxi and his taxi medallion from Checker Motors, and Checker Motors contracted with Checker Taxi for the trademark right to lease cabs bearing Checker Taxi's colors and insignia. The plaintiff had a fare dispute with Paryani and fled his taxi without paying. Paryani caught her outside the taxi to demand his money. Paryani claims he merely grabbed the plaintiff's jacket, while the plaintiff claims she was injured when Paryani slammed her repeatedly against the side of the taxi. Several months after the incident, the plaintiff suffered severe pain in her hip and was diagnosed with sacroiliac joint dysfunction.

The plaintiff filed a complaint against Paryani and Checker Taxi on October 20, 1989. The plaintiff filed her amended complaint on March 6, 1990, and her second amended complaint on January 31, 1991. The second amended complaint contained seven counts: count I alleged battery by Paryani; count II alleged false imprisonment by Paryani; count III alleged intentional infliction of emotional distress by Paryani; count IV alleged a breach of a duty to protect by Checker Taxi; count V alleged a breach of implied contract by Checker Taxi; count VI alleged a breach of duty to supervise by Checker Taxi; and count VII alleged ratification of Paryani's actions by Checker Taxi. Counts I, II, and VII sought punitive damages in addition to compensatory damages.

On January 23, 1992, the plaintiff filed a motion for leave to file a third amended complaint naming Checker Taxi Company as an additional defendant. The proposed complaint had the same seven counts but added Checker Taxi Company to the allegations against Checker Taxi in counts IV, V, VI, and VII. The court granted the motion on January 30, 1992. On March 18, 1992, defendant Checker Motors filed its appearance on behalf of Checker Taxi Company, explaining that it had been incorrectly named because Checker Taxi Company was a division of Checker Motors.

On April 8, 1992, Checker Motors moved to dismiss the third amended complaint under section 2—619(5) of the Code of Civil Procedure (735 ILCS 5/2—619(5) (West 1992)) on the grounds that the new claims against Checker Motors were barred by the two-year stat-

ute of limitations for personal injuries. The plaintiff's memorandum in opposition argued that section 2—616(d) of the Code of Civil Procedure (735 ILCS 5/2—616(d) (West 1992)) allowed the plaintiff to add Checker Motors because the addition related back to the filing of her original complaint. The plaintiff stated that she first began to learn of Checker Motors through a deposition of John Rohr in the summer of 1991, when she was informed that Paryani leased his taxi and his taxi medallion from Checker Motors. She claimed the failure to join Checker Motors had been inadvertent, a requirement under section 2—616(d), because of the confusing structure of the Checker entities at the time of filing her *original* complaint. In its reply, Checker Motors explained that because the plaintiff had admitted full knowledge of Checker Motors' identity by June 12, 1991—the date of the deposition of Rohr—the plaintiff's failure to add Checker Motors before the limitations period expired on August 25, 1991, had not been inadvertent. However, the motion to dismiss was denied on September 11, 1992.

On February 1, 1994, the case was returned to the trial call after change was taken by the defendants' attorneys. The plaintiff attempted to file a fourth amended complaint on February 2, 1994, but it was struck by the trial court. On February 7, 1994, the trial court granted Paryani's motion *in limine* to prevent plaintiff's counsel or witnesses from commenting on insurance coverage available to Paryani.

Opening statements for the jury trial began on February 4, 1994. The plaintiff testified that on August 25, 1989, she was at her apartment at 1250 N. La Salle St. in Chicago when her roommate, Lisa Christiansen, arrived from work at 5 p.m. and asked the plaintiff if she wanted to go to the health club with her. The plaintiff said yes, after which Ms. Christiansen told her, "You have to hurry because I have arranged for a cab and we need to hurry downstairs." Ms. Christiansen wanted to arrive on time for her aerobics class. The plaintiff testified that "Lisa changed her clothes, grabbed a bag, and I grabbed my coat and we ran out the front door." It took the women four or five minutes to leave the apartment. When the women went outside, they found Paryani standing outside a taxicab which had "CHECKER TAXI ASSN. INC." written on its side. On previous occasions the plaintiff had called Checker after looking at an advertisement for Checker in the Yellow Pages which stated, "Dial for prompt dependable service."

The two women went in the taxi, and they noticed the meter was already running and stated a fare of $1.80 plus 50 cents for the extra person. Ms. Christiansen asked Paryani to start the meter over, but

Paryani yelled that he had been waiting and could charge what he wanted. Ms. Christiansen asked if they could get out of the cab, but Paryani refused and pulled out onto the street going north towards the health club. As Paryani drove, he turned around and verbally abused and cursed the women for four blocks, ignoring the plaintiff's demand to be let out.

As Paryani slowed down for a red light, both women opened their doors and jumped out of the taxi. The plaintiff crossed three lanes of traffic to the other side of the street when Paryani grabbed her hair and coat and dragged her back to the taxi. Paryani threw her up against the car by her back and started slamming her against the car screaming and spitting and telling her "I'm going to make you pay." Paryani shoved her into the car, the plaintiff struggled out, and Paryani began slamming her against the car again. A man with a gun came up and told Paryani to let plaintiff go, which Paryani did. The man told the girls to run to the police, and they went across the street and dialed 911.

The plaintiff later called Checker to complain that she had been attacked. The plaintiff testified that the next contact she had with Checker was a Checker investigator who came to her home. The following testimony occurred:

> "MR. VICKREY (Plaintiff's counsel): What happened next?
>
> MS. PLOOY: He put the tape recorder away I think, and he offered me $200—a couple hundred dollars.
>
> MR. WIEDERER (Paryani's counsel): Objection, and I'd ask that that be stricken. That's improper.
>
> THE COURT: The objection is overruled. This man identified himself?
>
> MS. PLOOY: Yes.
>
> THE COURT: As being associated with the cab company?
>
> MS. PLOOY: He was an investigator with Checker.
>
> THE COURT: All right. Go ahead.
>
> MR. VICKREY: Before he did that did you say anything to him about what had happened?
>
> MS. PLOOY: I gave a brief synopsis of what happened.
>
> Q. Did—you said something about $200, what is it that this man said to you.
>
> A. He offered me some money to settle the problem, I suppose."

The plaintiff testified that she was sore in her groin the day after the incident. In late November of 1989, the plaintiff had severe pain in her leg as if her hip was dislocated. The plaintiff testified that she went to an emergency room but she didn't have insurance and they wanted $250 to see her. An objection to this testimony was sustained. The plaintiff's pain subsided for a while, but grew again the following

spring. Plaintiff's counsel asked if she had medical insurance at this time, and she responded "no" after the defendants' objection was overruled. The plaintiff went to Dr. Mitchell Goldflies and received a diagnosis, and she further described the effects of her injury and the treatments she received.

On cross-examination, the following colloquy occurred:

"MR. JOHNSON (Checker Motors' counsel): And I think you told us yesterday that one of the reasons you got in this cab is because of the ad, the Checker phone book ad; is that right?

MS. PLOOY: No. That's what we—what I used to call when I looked in the Yellow Pages previously.

Q. All right. But this time you didn't call the cab at all?

A. No, I did not.

Q. If it had been a Flash Cab, would you have gotten in it?

A. Yes.

Q. If it had been any other cab, would you have gotten in it?

A. Not any other junky cab, no. I tried to stay with respectable cab companies."

The plaintiff also admitted that she identified the taxi as a Yellow Cab when she phoned 911 after the incident.

Dr. Mitchell Goldflies testified that the plaintiff's injury was a sacroiliac joint dysfunction. He stated that the "number one cause for unstable sacroiliac joints is a shear stress," and that a force generated through the pelvis from hitting the side of a car could generate a significant shear stress, and that such a shear stress could cause a sacroiliac joint dysfunction. Dr. Goldflies stated that a golf swing would not be a significant shear stress, but admitted on cross-examination that he could not rule out a golf swing as the cause of the plaintiff's injuries.

Two chiropractic physicians, Paul Rubin and Shevalia Adams, also both testified that a sacroiliac joint dysfunction could result from a person being slammed against the side of a car. Alexis Bradley testified that in 1989 she saw the plaintiff several times every week, and that after August 25, 1989, the plaintiff limped, walked slower, and diminished her physical activities.

The plaintiff's version of the incident was sharply disputed by Paryani, and widely differing versions were offered by the witnesses in the case. At the conclusion of the case, the plaintiff nonsuited count II, and the trial court granted the defendants a directed verdict as to counts III, IV, V, and VI. The surviving counts were count I for battery against Paryani and count VII for ratification by Checker Taxi and Checker Motors.

At the conference for jury instructions, the court allowed an

instruction which stated that Paryani was an agent of Checker Taxi and Checker Motors, precluding the jury's consideration of the issue. The court held that Paryani's apparent agency had been proven. The defendants objected that the plaintiff had not shown any reliance that she got into the taxi because it was a Checker taxi, a requirement to establish apparent agency. However, the court disagreed, stating:

> "She had seen the [Checker] ad in the telephone book, et cetera. And the normal reaction of an individual when he sees Checker Cab, he sees a reliable organization. If it were Joe Schmo from the south side or something, she wouldn't have gotten into that cab. *** I feel that there is apparent agency proven in this particular instance."

On February 17, 1994, the plaintiff filed her fifth amended complaint, which added a count of apparent agency as count II. The complaint left the battery allegation as count I and renamed the ratification count as count III. Count II for apparent agency sought compensatory damages from Checker Taxi and Checker Motors for the acts of their apparent agent, Paryani, who was acting within the scope of his authority. The trial court granted a directed verdict in favor of the plaintiff as to count II and did not let the count go to the jury.

The jury returned its verdict on February 17, 1994, finding for the plaintiff against Paryani on count I and against Checker Taxi and Checker Motors on count III. The jury awarded $152,500 in compensatory damages against all the defendants and $150,000 in punitive damages against Checker Motors and Checker Taxi on count III. The trial court granted the defendants' motion for judgment *n.o.v.* on count III, but the trial court denied the defendants' other post-trial motions. The plaintiff appeals the court's granting of judgment *n.o.v.*, seeking reinstatement of the award of punitive damages. All three defendants have cross-appealed the court's denial of judgment *n.o.v.* as to the plaintiff's compensatory damages, claiming that the plaintiff did not demonstrate that her injuries resulted from Paryani's battery. In addition, Checker Motors claims that the court erred in allowing the plaintiff to add Checker Motors as a defendant after the expiration of the statute of limitations on the plaintiff's claim; Checker Taxi claims that the court erred in requiring the jury instruction which precluded a jury determination on the issue of Paryani's apparent agency; and Paryani claims the court erred by allowing the plaintiff to testify that the defendants' investigator offered her $200 to settle her claim.

OPINION

Because we find the defendants' cross-appeals to be determinative in this case, we address them first.

## I

The defendants first argue that they are entitled to judgment *n.o.v.* because the plaintiff could not causally connect her injury to the incident with Paryani. Ordinarily, questions concerning proximate cause are factual matters for the jury to decide. (*Jefferson v. City of Chicago* (1995), 269 Ill. App. 3d 672, 676, 646 N.E.2d 1305; *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 156, 554 N.E.2d 223.) A judgment *n.o.v.* can be granted only where all evidence, when viewed in its aspect most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Tierney v. Community Memorial General Hospital* (1994), 268 Ill. App. 3d 1050, 1054, 645 N.E.2d 284; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.

In the instant matter, viewing the testimony most favorably to the plaintiff, we find the plaintiff sufficiently demonstrated causation. Contrary to the defendants' assertions, the plaintiff repeatedly testified that her back had been slammed against the side of the taxi, generating a force through her pelvis which her doctors stated could have caused her injuries. The defendants also argue that the causation testimony was not based on a reasonable degree of medical certainty. However, the record reveals that Dr. Goldflies prefaced many of his answers with the statement that his opinion was within a reasonable degree of medical certainty. Moreover, there is no magic to this phrase, and if the testimony of the expert reveals that his or her opinions are based upon specialized knowledge and experience and grounded in recognized medical thought, it is of no consequence that the witness has failed to use the phrase "within a reasonable degree of medical certainty." *Dominguez v. St. John's Hospital* (1993), 260 Ill. App. 3d 591, 595, 632 N.E.2d 16.

The defendants also contend that none of the plaintiff's experts could completely rule out golfing as the cause of her injuries. However, Dr. Goldflies testified that a shear stress injury was a more likely cause in his experience. The defendants claim this testimony was purely speculative because it was phrased as a probability, but expert testimony in terms of probabilities is proper if the expert can relate the statistic to plaintiff's specific medical condition. (*Creighton v. Thompson* (1994), 266 Ill. App. 3d 61, 71, 639 N.E.2d 234.) Nor was the jury's reliance on this probability unduly speculative. Ms. Bradley

testified as to the immediate deterioration in the plaintiff's health following the incident. Proof of a change in health following an injury is competent as tending to establish that the impaired condition was due to the trauma. (*Scholle v. Continental National American Group* (1976), 44 Ill. App. 3d 716, 722, 358 N.E.2d 893.) *Scholle* held that the change in its plaintiff's health after her injury was of sufficient weight to deny a motion for judgment *n.o.v.*, even when the plaintiff's causation claim was not the only possible conclusion, as long as it was a reasonable conclusion. (*Scholle*, 44 Ill. App. 3d at 722.) Likewise, we believe the jury's inferences and conclusions were reasonable, taking the evidence in its most favorable light, and thus we conclude that the trial court correctly denied the defendants' motion for judgment *n.o.v.* as to the compensatory damages.

## II

■ Checker Motors argues that the court erred when it allowed the plaintiff to amend her complaint to include Checker Motors after the statute of limitations for her claim had expired. Section 2—616(d) governs this issue:

> "(d) A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if *all* the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action commenced; (2) failure to join the person as a defendant was inadvertent; (3) service of summons was in fact had upon the person, his or her agent *** even though he or she was served in the wrong capacity ***; (4) the person, within the time that the action might have been brought or the right asserted against him or her, knew that the original action was pending ***; and (5) it appears *** that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading ***." (Emphasis added.) (735 ILCS 5/2—616(d) (West 1992).)

All of the requirements of section 2—616(d) must be satisfied for a plaintiff to add a defendant after the statute of limitations has expired, and even if only one of the requisite elements of section 2—616(d) is not met, the amended complaint cannot relate back. (*Webb v. Ambulance Service Corp.* (1994), 262 Ill. App. 3d 1039, 1043-44, 635 N.E.2d 643; *Newey v. Newey* (1991), 215 Ill. App. 3d 993, 1001, 576 N.E.2d 137.) The decision to allow amendments to pleadings to add a defendant rests with the sound discretion of the trial judge. *Newey*, 215 Ill. App. 3d at 1005; *Behr v. Club Med, Inc.* (1989), 190 Ill. App. 3d 396, 406, 546 N.E.2d 751.

■ Checker Motors argues that the plaintiff did not satisfy section 2—616(d)(2) because her failure to join Checker Motors was not inadvertent. We agree. "Inadvertence" has been defined as excusable ignorance, not excusable failure to act after the facts are discovered. (*Zincoris v. Hobart Brothers Co.* (1993), 243 Ill. App. 3d 609, 614, 611 N.E.2d 1327; *Newey*, 215 Ill. App. 3d at 998.) Inadvertence does not include failure to act appropriately when defendant's true identity is known to the plaintiff. (*Zincoris*, 243 Ill. App. 3d at 614; *Newey*, 215 Ill. App. 3d at 998.) Ignorance, in the context of section 2—616(d)(2), connotes a lack of knowledge of the identity or existence of the defendant. (*Zincoris*, 243 Ill. App. 3d at 614; *Newey*, 215 Ill. App. 3d at 998.) When a plaintiff is aware of the identity of a defendant before the period of limitation has run, but does not seek to add that defendant to her complaint until after the statute has run, failure to join that defendant is not inadvertent. *Zincoris*, 243 Ill. App. 3d at 614; *Newey*, 215 Ill. App. 3d at 998.

In the instant matter, we find that the plaintiff's failure to join Checker Motors was not inadvertent. The plaintiff learned of Checker Motors' involvement on June 12, 1991, more than two months before the limitations period ended, yet the plaintiff waited seven months to add Checker Motors as a defendant. The plaintiff has provided no excuse or explanation as to why she waited, and her failure to act after discovering full knowledge of Checker Motors' identity precludes us from holding that her failure to add Checker Motors was inadvertent. See *Viirre v. Zayre Stores, Inc.* (1991), 212 Ill. App. 3d 505, 517-18, 571 N.E.2d 209 (no inadvertence when plaintiff knew of defendant at least 30 days before expiration of statute of limitations and did not add defendant until six months after).

The plaintiff claims that she satisfied section 2—616(d)(2) because her failure to name Checker Motors was inadvertent at the time of filing the original complaint, relying on *Evans v. Graber, Inc.* (1983), 115 Ill. App. 3d 532, 450 N.E.2d 482. However, *Evans* stated, "The timeliness of a plaintiff's motion *** under section 2—616 *** is assessed in terms of when the plaintiff learned the identity of the proper defendant." (*Evans*, 115 Ill. App. 3d at 538.) *Evans* allowed the joinder only after specifically differentiating its case from those where the plaintiff had knowledge of the defendant before the limitations period had run. (*Evans*, 115 Ill. App. 3d at 536.) The plaintiff also argues that she satisfied section 2—616(d)(2) because Checker Motors and Checker Taxi were "alter egos" and confused her with the complex intermingling of their corporate structure, relying on *Bates v. Wagon Wheel Country Club, Inc.* (1971), 132 Ill. App. 2d 161, 266 N.E.2d 343. However, the mere fact that businesses set up different entities to

conduct their affairs does not justify a finding of inadvertence unless the profusion of such entities causes confusion in identifying the proper defendants. (*Newey*, 215 Ill. App. 3d at 999 (no inadvertence where plaintiffs were not confused as to existence and identity of defendants); *Behr*, 190 Ill. App. 3d at 406 (no inadvertence where similar names did not prevent plaintiff from discovering proper defendant).) Because the plaintiff's confusion ended before the limitations period expired, any complexity of the corporate structure did not prevent her from adding Checker Motors. Moreover, *Bates* also emphasized the importance of its plaintiff lacking knowledge before the limitations period had run, contrasting its case from another where the "plaintiff in that case could have and should have corrected the party defendant before the running of the statute." *Bates*, 132 Ill. App. 2d at 164.

At oral argument, the plaintiff claimed for the first time that she continued to be confused as to the identity of Checker Motors until just before she added the corporation in her third amended complaint. Initially, we find that the plaintiff has waived this issue—Supreme Court Rule 341(f) requires an appellee's brief to conform to Rule 341(e)(7), and that rule states: "Argument *** shall contain the contentions of the appell[ee] and the reasons therefor ***. *** Points not argued are waived and shall not be raised in *** oral argument, or on petition for rehearing." (134 Ill. 2d Rules 341(e)(7), (f); *Wiseman-Hughes Enterprises, Inc. v. Reger* (1993), 248 Ill. App. 3d 854, 857, 617 N.E.2d 1310.) Moreover, the record, including the plaintiff's own response in the trial court to oppose the motion to dismiss, demonstrates that this new assertion is meritless.

Lastly, the plaintiff argues that joinder of Checker Motors is necessary in the interest of fairness, the ultimate test of a trial court's exercise of discretion under section 2—616(d). (*Newey*, 215 Ill. App. 3d at 1005; *Behr*, 190 Ill. App. 3d at 406.) However, when a plaintiff has notice of the proper defendant and does not act in a timely manner, allowing the joinder would sanction active neglect rather than mere inadvertence and does not further the ends of justice. (*Behr*, 190 Ill. App. 3d at 407.) The tolling of a statute of limitations is normally restricted to those situations in which a plaintiff has been prevented from pursuing her cause of action through no fault of her own. (*Krecek v. Board of Police Commissioners* (1995), 271 Ill. App. 3d 418, 426, 646 N.E.2d 1314; *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 356, 326 N.E.2d 737.) Accordingly, because the plaintiff had the knowledge and opportunity to add Checker Motors before the statute of limitations period had expired, we hold that the trial court abused its discretion in allowing the plaintiff to add

Checker Motors as a defendant, and we reverse the judgment against Checker Motors.

## III

■ Checker Taxi claims that the court erred in requiring a jury instruction which conceded Paryani's agency with Checker Taxi and precluded the jury's consideration of the issue. The burden of proving the existence of an agency relationship is on the party seeking to charge the alleged principal. (*Pyskaty v. Oyama* (1994), 266 Ill. App. 3d 801, 824, 641 N.E.2d 552; *Anderson v. Boy Scouts of America, Inc.* (1992), 226 Ill. App. 3d 440, 444, 589 N.E.2d 892.) The existence and scope of an agency relationship are usually questions of fact to be decided by the trier of fact, unless the parties' relationship is so clear as to be undisputed. *Pyskaty*, 266 Ill. App. 3d at 826; *Northern Trust Co. v. St. Francis Hospital* (1988), 168 Ill. App. 3d 270, 276, 522 N.E.2d 699.

■ Apparent agency is based on the doctrine of equitable estoppel, and it exists when the principal creates the reasonable impression that its "agent" has authority to act. (*O'Banner v. McDonald's Corp.* (1995), 273 Ill. App. 3d 588, 593, 653 N.E.2d 1267; *Northern Trust*, 168 Ill. App. 3d at 276.) An apparent agency gives rise to tort liability where the injury would not have occurred but for the injured party's justifiable reliance on the apparent agency. (*Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 524, 622 N.E.2d 788.) To prove apparent agency one must establish: (1) the principal's consent to or knowing acquiescence in the agent's exercise of authority, (2) the third party's knowledge of the facts and good-faith belief that the agent possessed such authority, and (3) the third party's detrimental reliance on the agent's apparent authority. *O'Banner*, 273 Ill. App. 3d at 593; *Pyskaty*, 266 Ill. App. 3d at 825.

■ In this matter, we believe it was a question of fact whether the evidence proved the third requirement, that detrimental reliance occurred. There was substantial evidence that the plaintiff did not detrimentally rely on Checker Taxi's reputation, as the plaintiff may well have entered the taxi no matter which company had provided it. The plaintiff was told, "You have to hurry because I have arranged for a cab and we need to hurry downstairs." The plaintiff testified that "Lisa changed her clothes, grabbed a bag, and I grabbed my coat and we ran out the front door." Because the plaintiff had not called the taxi, and because the women were in such a hurry, it is questionable whether plaintiff paid any attention whatsoever as to which company's taxi was waiting for her as they "*ran* out the front door." (Emphasis added.) This doubt gains further credence from the fact

that the plaintiff misidentified the taxi as a Yellow Cab to the police immediately after the incident.

The trial court placed emphasis on the plaintiff's previous uses of a Checker advertisement. However, these previous occasions are completely irrelevant if the plaintiff did not rely upon the advertisement on the night in question, and the plaintiff herself testified that she did not rely on the advertisement before getting into Paryani's taxi. The only evidence of any reliance on Checker Taxi's reputation is the plaintiff's testimony that she would not have gotten into a "junky cab" because she "*tried* to stay with respectable companies." (Emphasis added.) Based on the record before us, we cannot say that the factual question of apparent agency was so clear as to be undisputed. Thus, we reverse the judgment against Checker Taxi and remand this case for a new trial.

The plaintiff argues that Paryani believed he reported to somebody at the "Association," but this has no bearing on the issue of detrimental reliance. Moreover, we have stated, "It is not the conduct or words of the apparent *agent* that create apparent agency, but rather, the words or conduct of the apparent *principal*." (Emphasis in original.) (*Tierney*, 268 Ill. App. 3d at 1062.) Plaintiff's arguments on other matters are irrelevant to the issue of detrimental reliance.

■ Lastly, we also agree with Checker Taxi that it was prejudiced through the plaintiff's testimony that she lacked medical insurance. Evidence of a party's financial standing is irrelevant and prejudicial and may constitute reversible error. (*Lorenz v. Siano* (1993), 248 Ill. App. 3d 946, 953, 618 N.E.2d 666.) The plaintiff claims the testimony came only as rebuttal of the defendants' claims that the plaintiff routinely visited doctors for other matters but not the alleged injury. However, the record reveals that the insurance issue was first brought up by plaintiff's counsel during direct examination of the plaintiff. Moreover, the issue of insurance would be irrelevant to a claim that the plaintiff paid much more attention to other maladies rather than the alleged injury. The additional prejudice of this error further supports Checker Taxi's right to a new trial.

## IV

■ Paryani claims the court erred by allowing the plaintiff to testify that the defendants' investigator offered her $200 to settle her claim. He also cites error by the court in allowing inflammatory evidence of other misconduct by Paryani which was irrelevant to the claims against him. We initially note that the plaintiff has not responded to either of these arguments in her reply to the cross-

appeal. The requirements of supreme court rules apply to appellees and cross-appellees with equal strength. (See *Ballard v. Bird* (1980), 84 Ill. App. 3d 157, 160, 405 N.E.2d 1.) Rule 341(f) requires the appellee to provide an argument containing an explanation of the contentions on appeal with citations to authority and pages of the record relied on. (134 Ill. 2d R. 341(f); *Wiseman*, 248 Ill. App. 3d at 857.) When an appellee does not address arguments in her brief, her position should be equivalent to that as if she had not filed a brief at all. *Wiseman*, 248 Ill. App. 3d at 857; *Korogluyan v. Chicago Title & Trust Co.* (1991), 213 Ill. App. 3d 622, 626, 572 N.E.2d 1154.

When the record is simple, and the claimed errors are such that this court can easily decide them on the merits without the aid of an appellee's brief, this court should decide the appeal on its merits. (*Wiseman*, 248 Ill. App. 3d at 857; *First Capital Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493.) Otherwise, if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record, the judgment of the trial court may be reversed. (*Talandis*, 63 Ill. 2d at 133.) In this case, the issues presented are not simple, and the record in this matter is over 3,500 pages. A court of review should not be compelled to act as appellee's advocate and search the record for the purpose of sustaining the circuit court's judgment (*Standard Management Realty Co. v. Johnson* (1987), 157 Ill. App. 3d 919, 923, 510 N.E.2d 991; *Talandis*, 63 Ill. 2d at 133), and thus we will examine Paryani's cross-appeal only for demonstration of *prima facie* reversible error.

■ First, we agree with Paryani that the plaintiff's testimony of the defendants' settlement offer was improper. Questions concerning settlement negotiation between the parties to a lawsuit are generally barred as they tend to be viewed as an admission of guilt. (*Lagoni v. Holiday Inn Midway* (1994), 262 Ill. App. 3d 1020, 1031, 635 N.E.2d 622; *Sawicki v. Kim* (1983), 112 Ill. App. 3d 641, 645, 445 N.E.2d 63.) In addition, public policy encourages settlement, and any negotiations and compromises are irrelevant and prejudicial. (*Uhr v. Lutheran General Hospital* (1992), 226 Ill. App. 3d 236, 258-59, 589 N.E.2d 723; *Barkei v. Delnor Hospital* (1988), 176 Ill. App. 3d 681, 694, 531 N.E.2d 413.) The court in *Sawicki* held that the plaintiff's commentary about a $100 offer of settlement justified reversal and remandment of its case for a new trial. Therefore, we find that Paryani has demonstrated *prima facie* reversible error, and we remand his case for a new trial.

■ In addition, we agree with Paryani that he was prejudiced

from the introduction of other misconduct which was irrelevant to this matter. Evidence of misconduct other than that in issue is not properly admissible to establish a person's disposition to behave in a certain way. (*Wernowsky v. Economy Fire & Casualty Co.* (1985), 106 Ill. 2d 49, 53, 477 N.E.2d 231.) We see no relevance to any testimony that Paryani went back to the plaintiff's apartment that night to obtain her address. We also see no relevance to complaints or disputes Paryani may have had with other customers or drivers. Paryani suffered prejudice from the admission of this substantial amount of improper evidence, and it should be excluded in a new trial.

■ Because of our resolution of the defendants' cross-appeals, we need not address the plaintiff's appeal to reinstate the judgment for punitive damages. Regarding an additional issue, the defendants complain bitterly about the plaintiff's continued reference to the American Country *Insurance* Company as Checker's investigator, while the plaintiff responds that it was the defendant's own witness who first announced the entire name of the investigating company. We note that in her appellate brief the plaintiff was able to successfully shorten the name to "American Country," and we believe the plaintiff can and must show just as much restraint at a new trial.

For the foregoing reasons, the judgment of the trial court is reversed and set aside, and the cause is remanded for further proceedings in accordance herewith.

Reversed and remanded.

GORDON and McNULTY, JJ., concur.